**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | * | |
| Plaintiff, | * | Case No. 1:22-CV-02977-GLR |
| vs. | * | |
| ISAAC M. NEUBERGER, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS</u>**

## I.      INTRODUCTION

On November 16, 2022,[1] the United States filed a Complaint against Isaac Neuberger ("Mr. Neuberger") to obtain a judgment "for transferring the assets of the Lehcim Holdings, Inc. to third parties before paying the United States' claim for income tax at a time when Lehcim Holdings, Inc., was insolvent."

In support of this contention, the United States alleges that the Internal Revenue Service issued a Notice of Deficiency[2] to Lehcim Holdings, Inc. ("Lehcim") on November 20, 2019 stating that the agency had determined that Lehcim underreported its tax for multiple years in the aggregate amount of $2,091,455.16.  Complaint, ¶ 9.  The United States further alleges that Mr. Neuberger – as President of Lehcim and with knowledge of the Notice of Deficiency – thereafter transferred $2,627,280 to other creditors of Lehcim between November 20, 2019 and March 5, 2020.  Complaint, ¶¶ 11, 13.  These acts occurred when Lehcim was or became insolvent. Complaint, ¶ 15.  The United States also alleges that the tax liabilities referenced in the Notice of Deficiency were assessed by the Internal Revenue Service on July 13, 2020, after the alleged transfers occurred.  Complaint, ¶ 12.

The United States fails to state a claim for relief and this Complaint should be dismissed under Rule 12(b)(6).  Even drawing inferences in the manner most favorable to the United States, it did not have any lien until – at the earliest – July 13, 2020, when the taxes were assessed.  As

---

[1] The United States agreed to extend the time to respond to the Complaint until January 20, 2023.

[2] For tax purposes, a deficiency is defined generally as the amount by which the tax imposed by law exceeds the amount reported by the taxpayer on its tax return.  *See, generally,* 26 U.S.C. ("I.R.C.") § 6211(a).  Pursuant to I.R.C. § 6212(a), the Internal Revenue Service is required to mail a Notice of Deficiency to a taxpayer prior to the assessment of additional tax arising from an alleged deficiency.  The Internal Revenue Service may not assess additional tax arising from a deficiency until the statutory appeals period has lapsed.  I.R.C. § 6213(a).

this is a tax collection matter, the Federal Tax Lien Act controls and it dictates the applicable rules relating to priority – not 31 U.S.C. § 3713 ("the federal priority statute").

Under either the Federal Tax Lien Act or the federal priority statute, the United States cannot assert priority without first obtaining an underlying lien. While the Notice of Deficiency allegedly contended that Lehcim underreported its tax to the Internal Revenue Service, it did not (and could not) claim that Lehcim actually owed those amounts or create a lien.[3] Finally, the United States does not allege any of the prerequisite events (e.g., an insolvency proceeding) necessary to trigger application of the federal priority statute. Accordingly, the United States is not entitled to relief and, therefore, the Complaint must be dismissed.

## II.   LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.* 591 F.3d 250, 253 (4th Cir. 2009). But "such deference is not accorded to legal conclusions stated therein." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

The Supreme Court explained that "a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient

---

[3] As explained *infra*, a Notice of Deficiency is only a notice that additional tax may be owed by Lehcim (as compared to what was originally reported as due). A Notice of Deficiency is neither an actual claim for payment of taxes due nor does it state what liability is, or could be, due to the government.

factual allegations that make the asserted claim plausible on its face. *Id.* at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 678.

A plaintiff's factual allegations must show "entitlement to relief" to survive a motion to dismiss. *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 341 (D. Md. 2011) (citing *Twombly*, 550 U.S. at 556). Thus, to state a valid claim, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

### III.     THE FEDERAL TAX LIEN ACT, NOT 31 U.S.C. § 3713, CONTROLS HERE

The United States has filed an action against Mr. Neuberger pursuant to 31 U.S.C. § 3713, commonly referred to as the federal priority statute.  That section provides generally that "[a] claim of the United States Government shall be paid first when…a person indebted to the Government is insolvent and…(i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed…"  31 U.S.C. § 3713(a)(1).  That statute also provides that "[a] representative of a person or an estate…paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."  31 U.S.C. § 3713(b).

However, the federal priority statute does not apply here due to the application of the Federal Tax Lien Act of 1966. *See* 26 U.S.C. § 6321 *et seq.* This issue was specifically dealt with in *United States v. Estate of Romani*, 523 U.S. 517 (1998). In *Estate of Romani*, the Supreme Court concluded:

> The 1966 Act effectively limited § 3713's operation as to tax debts, relying on *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 738, which noted that the 1966 Act modified the Government's preferred position in the tax area and recognized the priority of many state claims over federal tax liens.

*Id.* In other words, while the federal priority statute still applies to other matters:

> Nothing in the federal priority statute's text or its long history justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien that the Tax Lien Act declares 'shall not be valid' in a case of this kind…given this Court's unambiguous determination that the federal interest in the collection of taxes is paramount to its interest in enforcing other claims [] it would be anomalous to conclude that Congress intended the priority statute to impose greater burdens on the citizen than those specifically crafted for tax collection purposes.

*Id.* at 518.

The Supreme Court noted further that, historically, "the [tax] lien applied, without exception, to all property of the taxpayer immediately *upon the neglect or failure to pay the tax upon demand*. An unrecorded tax lien against a delinquent taxpayer's property was valid even against a bona fide purchaser who had no notice…" *Id.* at 523 (emphasis supplied). That is, even prior to the express limitations dictated in *Estate of Romani*, no lien and no priority could be extended to the United States until a taxpayer failed to pay tax upon demand. However, in light of commercial concerns caused by such invisible liens, subsequent legislation broadened protections afforded to creditors dealing with delinquent taxpayers. *Id.* at 523-524 (noting changes made in 1913 and 1939). Ultimately, in 1966, those creditor protections were broadened again with the enactment of I.R.C. § 6323 within the Federal Tax Lien Act.

In *Estate of Romani*, the United States argued that the federal priority statute applied in all tax matters notwithstanding the Federal Tax Lien Act, but the Supreme Court disagreed.  In ultimately finding that "nothing in the text or the long history of interpreting the federal priority statute justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien," the Supreme Court relied heavily on the legislative intent underlying the Federal Tax Lien Act.  *See id.* at 534 ("the 1966 amendments to the Tax Lien Act bespeak a strong condemnation of secret liens…These policy concerns shed light on how Congress would want the conflicting statutory provisions to be harmonized…").  *See also United States v. Kimbell Foods*, 440 U.S. 715, 738 (1979) (Federal Tax Lien Act provides further evidence that treating the United States like "any other lender" would not undermine federal interests and "[t]o ignore Congress' disapproval of unrestricted federal priority in an area as important to the Nation's stability as taxation would be inconsistent with its function").

The holding of *Estate of Romani* requires that in cases involving tax debt, the government must obtain a lien against the taxpayer first and, then, it can apply the priority rules dictated in I.R.C. § 6323 – and not 31 U.S.C. § 3713.  Importantly, the federal priority statute does not create a lien – it merely dictates priority of that lien once created.  *See United States v. Fisher*, 6 U.S. 358, 390 (1805) ("no lien is created by this law" and "[n]o bona fide transfer of property in the ordinary course of business is overreached"); *H.B. Agsten v. Huntington Tr. SAV*, 388 F.2d 156, 160 (4th Cir. 1967) ("the insolvency statute, as has long been established, does not create a lien but simply establishes a priority").  *See also United States v. Gilbert Associates*, 345 U.S. 361, 366 (1953) (United States has no claim of priority against property no longer in possession of a debtor).[4]  Accordingly, the Court must look to the allegations within the Complaint to determine

---

[4] Other cases have followed *Estate of Romani* on this very issue.  *See United States v. Krasicky*, Case No. 15-11247 (E.D. Mich. Mar. 30, 2016) (dismissing action under 31 U.S.C. § 3713 due to

if and when the government had a cognizable lien under the Federal Tax Lien Act and then apply the relevant priority rules contained therein to determine whether the claims have priority here.

### IV.   THE UNITED STATES HAD NO LIEN BEFORE THE ALLEGED TRANSFERS OCCURRED AND DOES NOT HAVE A VALID CLAIM OF PRIORITY

The United States specifically alleges that "the tax liabilities [referenced in the Notice of Deficiency] were assessed on July 13, 2020." Complaint, ¶ 12.  This is the very earliest that the Internal Revenue Service could legally obtain a lien against any property of Lehcim.  Even if the Internal Revenue Service's lien had priority over other claims, the lien cannot attach to property that was no longer in possession of Lehcim when it came into being.  *See, e.g.,* IRS Chief Counsel, ILM 200110007 (November 22, 2000) ("Accordingly, at the time the lien arose the property was no longer property of the taxpayer and the lien could not attach to the property.  *See SEC v. Levine*, 881 F.2d 1165, 1176 (2d Cir. 1989) (tax lien does not attach to property which was disgorged and turned over to the receiver prior to assessment).").  Here, there can be no liability because Lehcim was not in possession of the property at issue when the lien sprang into being.

The notes accompanying the Federal Tax Lien Act explain that, even prior to its enactment, "a lien for federal taxes arises when a taxpayer's liability is assessed.  The lien attaches to all of the property he then holds or subsequently acquires.  The assessment is made when the unpaid tax liability is entered on the appropriate records of the Internal Revenue Service…" Federal Tax Lien Act of 1966, H.R. 11256, 89th Congress, at p. 2 (1966).

---

application of Federal Tax Lien Act); *Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716, 719 (9th Cir. 2001) (Federal Tax Lien Act applies in place of federal priority statute for tax liens); *Straus v. U.S.*, 196 F.3d 862, 865 (7th Cir. 1999) (general priority rule superseded by Tax Lien Act of 1966); *Trane Company v. CGI Mechanical, Inc.*, Civil Action No.: 2:09-CV-01045-PMD, at *9 (D.S.C. July 28, 2010) (United States must satisfy requirements of I.R.C. § 6323 to have priority over other liens).

4853-4428-1165, v. 1

The process necessary to obtain a tax lien in favor of the Internal Revenue Service – and to obtain any claim with which to give priority to under 26 U.S.C. § 6323 – was explained by the Ninth Circuit as follows:

> Section 6323 speaks only to the truly secret lien imposed by 26 U.S.C. § 6321. The latter section refers to the taxpayer in its declaration that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount…shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Any doubt that § 6321 refers to the taxpayer when it speaks of a "person liable to pay any tax" is dispelled by the context in which it is nestled. The IRS is given the authority to assess taxes, and must do that in a particular manner. *See* 26 U.S.C. §§ 6201-6204. Thereafter, it must give notice to the taxpayer and demand payment. *See id.* § 6303.  If the tax is not paid, the lien provided for in 26 U.S.C. § 6321 springs into being.  Under § 6323, notice of that "secret lien" against the taxpayer's assets must be given. In fact, *Romani* involved just that sort of situation.

*Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716, 719 (9th Cir. 2001).  And, as stated in *United States v. Gilbert Associates*, 345 U.S. 361, 366 (1953), "the United States has no claim against property no longer in the possession of the debtor."  *Citing Thelusson v. Smith*, 15 U.S. 396 (1817) (requiring specific liens to be reduced to possession and stating that the priority statute "is not a lien; and therefore, it is said, that a conveyance shall not be defeated by it…").  *See also Krasicky,* at *20 (liability becomes a tax lien when tax was assessed and not paid after demand). The policy manual of the Internal Revenue Service confirms that 26 U.S.C. § 6323 must apply – not the federal priority statute – and that a lien is a prerequisite for tax collection: "[t]he general rule is that if the creditor would prevail against the IRS under IRC 6323 outside of an insolvency, it will also prevail against the IRS in insolvency."  IRM 5.17.13.3(1)(d) (07-09-2012) ("The Federal Priority Statute does not apply if, before the insolvency proceeding beings, another person has obtained an interest in the property that would prevail over the federal tax lien under IRC 6323.").

Here, even setting aside the inapplicability of the federal priority statute for other reasons, the United States did not have any tax lien that could have attached to property of Lehcim prior to the alleged transfers. A lien does not arise simply based on a statement that more tax may be due in a Notice of Deficiency – the Internal Revenue Service is required to also assess and demand such payment first. If the theory of the United States was to be adopted as requested here, the United States could obtain priority against rights of innocent third parties merely by alleging, without foundation and in whatever context, that taxes are potentially owed. Officers of a business could be rendered subject to potential liability by the mere threat of increased tax by the Internal Revenue Service. This flies in the face of all notions of due process, not to mention its conflict with clear statutory requirements and the potential to swallow any purpose of the Federal Tax Lien Act. That is why the federal priority statute does not operate in the manner requested by the United States and does not apply to impose liability against Mr. Neuberger here.

## V.     THE FEDERAL PRIORITY STATUTE ONLY APPLIES TO SPECIFIC TYPES OF PROCEEDINGS

Although the Federal Tax Lien Act applies here, the government's theory also fails to identify a reason why the federal priority statute could even apply if this was not a tax matter. The apparent justification for the application of the statute is that Mr. Neuberger, as President of Lehcim Holdings, Inc. caused it to transfer assets to third parties "to repay purported loans" at a time when the entity was insolvent (or which caused it to become insolvent). Complaint, ¶¶ 13, 15. But this alleged sequence of events does not trigger coverage of the federal priority statute.

The federal priority statute specifies that a claim shall be paid first when "a person indebted to the Government is insolvent and (i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed…"  31 U.S.C. § 3713(a)(1). In other words, even if an entity is

9

indebted to the government and is insolvent, the federal priority statute requires that a specified event occur to cause liability – i.e., an insolvency proceeding.

Here, there is no such insolvency proceeding that could cause the statute to apply or create liability for Mr. Neuberger.  Even though the Internal Revenue Service has argued for a more robust application of the federal priority statute to expand its collection abilities in this and other contexts, it has nonetheless acknowledged the inapplicability of the federal priority statute here:

> In general, the insolvency statute [i.e., 31 U.S.C. § 3713] has been confined to proceedings for the benefit of all creditors such as insolvent decedent's estates, general assessments for the benefit of creditors and general receivers.  Plumb, Federal Tax Liens 196-97 (3d ed. 1972).  If prior to insolvency another creditor of the debtor takes title or possession of the property, then the priority will not apply. *United States v. Vermont*, 377 U.S. 351 (1964);[5] *United States v. Gilbert Associates, Inc.*, 345 U.S. 361 (1953); *Thelluson v. Smith*, 15 U.S. 306 (1817).

ILM 200110007 (November 22, 2000).  Going further, the Internal Revenue Service indicates that:

> Assuming that the taxpayer is insolvent, then the United States would have a priority to the property unless the taxpayer was divested of title or possession of the property at the time the insolvency proceeding commenced…and the insolvency statute would no longer have applied to any subsequently initiated proceedings. We, therefore, conclude that the Service cannot claim a priority to the property in the receivership based on the tax lien or the federal priority statute.

---

[5] This case analyzed the prior version of 31 U.S.C. § 3713 – Revised Statutes § 3466 (31 U.S.C. (1946 ed.) § 191 – which was re-codified without substantial changes.  377 U.S. at 356-7.  That statute provides:

> Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, *in the hands of the executors or administrators*, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

*Emphasis added.*  This version made clear, as the Internal Revenue Service indicates, that the federal priority statute only applies to cases where fiduciaries have been transferred assets in an insolvency proceeding.

*Id.   See also* Internal Revenue Manual ("IRM") 5.17.13.2.2 (07-09-2012) (Section 3713(a)(1)(A)(i) applies where the debtor's property is transferred to a fiduciary in a legal proceeding brought to liquidate the insolvent debtor's property and pay the debtor's debts. *United States v. Oklahoma*, 261 U.S. 253 (1923); *Bramwell v. United States Fidelity and Guaranty Co.*, 269 U.S. 483 (1926)."[6] That analysis applies with equal force here.

The federal priority statute does not apply in this case as the United States has failed to allege that there was any insolvency proceeding within which any allegedly insolvent debtor's property was transferred to a fiduciary and, therefore, does not satisfy a foundational prerequisite of 31 U.S.C. § 3713.

## VI.     CONCLUSION

For the reasons set forth herein, there is no legal basis for imposing liability against Mr. Neuberger under 31 U.S.C. § 3713.  None of the preconditions required for its application – (i) a

---

[6] In *United States v. Oklahoma*, 261 U.S. 253, 254 (1923), the Supreme Court stated:

> Whenever a debtor is divested of his property in any of the ways mentioned in this section, the "person who becomes invested with the title is thereby made a trustee for the United States and is bound to pay their debt first out of the proceeds of the debtor's property". *Beaston* v. *Farmers' Bank*, 12 Pet. 102, 132. But, to entitle the United States to priority, there must be bankruptcy or insolvency as the latter is defined by the statutes or the authorities.

The Supreme Court went on to state:

> Mere inability of the debt to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part…Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property.

*Id.* at 259-60.  This opinion makes clear that, in order for fiduciary liability to apply, there must be some insolvency proceeding where a fiduciary (e.g., trustee, receiver, administrator) is obligated to pay competing creditors.

voluntary assignment in an insolvency proceeding, (ii) an attachment, or (iii) an act of bankruptcy – were alleged to apply in this case; these were simply payments "to repay purported loans from third parties." Moreover, in matters involving tax debts, the Federal Tax Lien Act of 1966 – not the federal priority statute – applies to determine priority of competing claims. Without an assessment of tax against Lehcim at the time of these transfers, there could be no lien against Lehcim and no priority could apply in favor of the United States. By the time a lien could potentially arise based on the allegations here – the date of assessment – the alleged transfers had already been made to third parties and the property was no longer in possession of Lehcim. As confirmed by the Supreme Court in *Gilbert Associates*, "the United States has no claim against property no longer in possession of the debtor." 345 U.S. at 366. While the federal priority statute may have a broad reach, it cannot create liability against Mr. Neuberger in this case. Accordingly, the Motion must be granted and this case must be dismissed.

Date: January 25, 2023                          Respectfully submitted,

                                                    */s/ James P. Ulwick*
                                                James Ulwick, Bar No. 00536
                                                Kramon & Graham, P.A.
                                                One South Street, Suite 2600
                                                Baltimore, Maryland 21201
                                                Telephone: 410-347-7426
                                                Fax: 410-539-1269
                                                julwick@kg-law.com

                                                    */s/ Brandon N. Mourges*
                                                Brandon N. Mourges, Bar No. 29477
                                                CREPEAU MOURGES
                                                1344 Ashton Road, Suite 110
                                                Hanover, Maryland 21076
                                                Telephone: 667-900-9912
                                                Fax: 667-999-0202
                                                brandon@usataxlaw.com