IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:22-cv-02977-GLR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISAAC M. NEUBERGER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Argument ..................................................................................................................... 3

    I.    The United States' complaint involves the straight-forward application of the Federal Priority Statute. ................................................................................................. 3

    II.   The Federal Priority Statute controls here because this is not a lien priority case. ............ 4

    III.  The United States' claim against Lehcim arose, at the latest, when the Notice of Deficiency was issued. .......................................................................................... 8

    IV.  The Federal Priority Statute applies when a company pays other creditors prior to the United States when a company is insolvent, regardless of whether there is an "insolvency proceeding." ......................................................................................... 10

Conclusion ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Comm'r,*
    1999 WL 1063545 (T.C. 1999)............................................................9

*Bramwell v. U.S. Fid. & Guar. Co.,*
    269 U.S. 483 (1926)..........................................................................10, 11

*Dep't of Homeland Sec. v. MacLean,*
    574 U.S. 383 (2015)............................................................................5

*Est. of Frost v. Comm'r,*
    1993 WL 75053 (T.C. 1993)..............................................................9

*Est. of Lee v. Comm'r of Internal Revenue,*
    2021 WL 3048393 (T.C. 2021), *aff'd,* 2022 WL 3594523 (3d Cir. Aug. 23,
    2022) ..................................................................................................8

*Est. of Lee v. Comm'r of Internal Revenue,*
    2022 WL 3594523 (3d Cir. Aug. 23, 2022)....................................2, 7, 11

*Forehand v. Comm'r,*
    1993 WL 533995 (T.C. 1993)............................................................2, 9

*Laing v. United States,*
    423 U.S. 161 (1976)............................................................................8

*Leigh v. Comm'r of Internal Revenue,*
    72 T.C. 1105 (1979)............................................................................9

*Lewis v. Reynolds,*
    284 U.S. 281, *modified,* 284 U.S. 599 (1932)..................................8

*Rubin v. Islamic Republic of Iran,*
    138 S. Ct. 816 (2018)..........................................................................5

*S.E.C. v. Credit Bancorp., Ltd.,*
    297 F.3d 127 (2d Cir. 2002)...............................................................8

*The Trane Co. v. CGI Mech., Inc.,*
    2010 WL 2998516 (D.S.C. July 28, 2010) .......................................7

*United States v. Bridle Path Enter., Inc.,*
    2001 WL 1688911 (D. Mass. Dec. 4, 2001) .....................................12

*United States v. Cole,*
   733 F.2d 651 (9th Cir. 1984) ........................................................2, 12

*United States v. Coppola,*
   85 F.3d 1015 (2d Cir. 1996)........................................................2, 8, 9

*United States v. Coyne,*
   540 F. Supp. 175 (D.D.C. 1981) ..........................................................12

*United States v. Detroit Timber & Lumber Co.,*
   200 U.S. 321 (1906)................................................................................5

*United States v. Est. of Kelley,*
   2020 WL 6194040 (D.N.J. Oct. 22, 2020)............................................3

*United States v. Est. of Romani,*
   523 U.S. 517 (1998)................................................................................5

*United States v. Kimball Foods, Inc.,*
   440 U.S. 715 (1979)................................................................................6

*United States v. Krasicky,*
   2016 WL 1242387 (E.D. Mich. Mar. 30, 2016) ...................................7

*United States v. Moriarty,*
   8 F.3d 329 (6th Cir. 1993) ...................................................................12

*United States v. Renda,*
   709 F.3d 472 (5th Cir. 2013) ....................................................... *passim*

*United States v. Russell,*
   2002 WL 31174181 (E.D. Mich. Aug. 22, 2002) ..............................6, 7

*United States v. State of Oklahoma,*
   261 U.S. 253 (1923)..........................................................................10, 11

*United States v. Tyler,*
   528 F. App'x 193 (3d Cir. 2013) ...........................................................3

**Statutes**

1 U.S.C. § 1................................................................................................3

26 U.S.C. § 6110......................................................................................11

26 U.S.C. § 6212........................................................................................4

26 U.S.C. § 6213........................................................................................4

iii

26 U.S.C. § 6214 ...................................................................................................................4

26 U.S.C. § 6215 ...................................................................................................................4

26 U.S.C. § 6321 ...............................................................................................................4, 8

26 U.S.C. § 6322 ...............................................................................................................4, 8

26 U.S.C. § 6323 .......................................................................................................2, 5, 6, 7

26 U.S.C. § 6331 ...................................................................................................................8

26 U.S.C. § 6601 ...................................................................................................................8

31 U.S.C. § 3701 ...........................................................................................................1, 5, 8

31 U.S.C. § 3713 ............................................................................................................ *passim*

**INTRODUCTION**

Federal law requires insolvent debtors to pay claims of the United States before paying other creditors.  This law aims to protect the public fisc, particularly where full payment of the government's claim is in jeopardy.  Congress gave this requirement teeth by imposing personal liability on a debtor's representative who disregards the priority of the United States' claim.  This case perfectly illustrates the need for this Federal Priority Statue, 31 U.S.C. § 3713.[1]

Lehcim Holdings, Inc. ("Lehcim") owes over $2 million in taxes.  The IRS sent Lehcim (through its officers) a notice of deficiency informing it of the tax debt and explaining how Lehcim could challenge the notice.  Lehcim did not challenge the notice.  Instead, immediately after receiving the notice from the IRS, Lehcim's president Isaac M. Neuberger ("Neuberger") transferred over $2.6 million of Lehcim's funds to purported creditors.  In less than five months, Neuberger, an attorney, had completely drained the sole account of Lehcim — a commingled client trust account maintained by Neuberger, Quinn, Gielen, Rubin, & Gibben P.A.  Rather than using his position as president to ensure that the government was paid, Neuberger did the exact opposite.

Neuberger's motion to dismiss should be denied.  Not one of Neuberger's three arguments holds up to basic scrutiny.

First, Neuberger argues that the Federal Priority Statute never applies to tax debts.  This is not true.  The Federal Priority statute applies broadly to government claims, including claims for taxes.  31 U.S.C. § 3701(b)(1) (defining claim or debt).  Neuberger relies heavily on a case involving lien priority.  The Supreme Court has recognized that the Federal Tax Lien Act, 26 U.S.C. §§ 6321-6323, preempts the Federal Priority Statute when it applies to protect

---

[1]        31 U.S.C. § 3713 is also often called the Federal Insolvency Statute.

1

purchasers and certain creditors.  But this is not a case about the IRS competing with any such protected creditors.  Neuberger never alleges any of the creditors he paid ahead of the United States had a lien, let alone one superior to the United States.  When 26 U.S.C. § 6323 is silent as to the relative priority of creditors, as it is here, the Federal Priority Statute applies when the debtor is insolvent and requires that the United States be paid first.  *See, e.g.*, *Est. of Lee v. Comm'r of Internal Revenue*, 2022 WL 3594523, at *1 (3d Cir. Aug. 23, 2022).

Second, Neuberger argues that the Government's claim under the Federal Priority Statute did not exist when the transfers were made, and thus there can be no liability.  Neuberger is wrong.  Courts have consistently held that mere knowledge that the IRS claims that taxes are due is sufficient to trigger personal liability under 31 U.S.C. § 3713(b).  *See, e.g.*, *United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996) (holding that executor had notice of the tax debt two years prior to the notice of deficiency being issued because he was involved in "discussions and negotiations … about an alleged tax deficiency"); *Forehand v. Comm'r*, 1993 WL 533995, at *5 (T.C. 1993) (holding that executor who transferred all remaining assets of an estate after receiving a notice of deficiency was personally liable under 31 U.S.C. § 3713(b)).

Third, Neuberger mischaracterizes cases and internal IRS documents to argue that the Federal Priority Statute applies only if there is an "insolvency proceeding."  This argument ignores that the Federal Priority Statute applies to insolvent debtors when "the debtor without enough property to pay all debts makes a voluntary assignment of property" and not just insolvency proceedings.  31 U.S.C. § 3713.  Numerous courts have applied the Federal Priority Statute outside of an insolvency proceeding.  *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013); *United States v. Cole*, 733 F.2d 651, 653-54 (9th Cir. 1984).

Therefore, Neuberger's motion to dismiss should be denied.

## ARGUMENT

**I.    The United States' complaint involves the straight-forward application of the Federal Priority Statute.**

The Federal Priority Statute "is almost as old as the Constitution, and its roots reach back ever further into the English common law." *Renda*, 709 F.3d at 479 (quotation omitted).  In its current form, the Federal Priority Statute states that "[a] claim of the United States Government shall be paid first" if the debtor is insolvent and one of three triggering events occurs —here, when "the debtor without enough property to pay all debts makes a voluntary assignment of property." 31 U.S.C. § 3713(a)(1)(A)(i).  If the debtor's representative pays "any part of a debt … before paying a claim of the Government," then the representative "is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b).[2]

"The representative liability provision, the provision at issue in this case, gives the Priority Statute 'teeth' by making a representative who pays a non-federal debt on behalf of a corporation before paying a federal claim personally liable for the amount paid." *Renda*, 709 F.3d at 480.  The statute imposes personal liability on representatives "to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid.'" *United States v. Tyler*, 528 F. App'x 193, 201 (3d Cir. 2013).

A corporate officer is personally liable if, on behalf of the corporation, he: (1) pays a non-federal debt, (2) before paying a claim of the United States, (3) at a time when the corporation was insolvent, (4) if he had knowledge or notice of the claim.  *Renda*, 709 F.3d at 480–81; *see also* 31 U.S.C. § 3713(b); *United States v. Est. of Kelley*, 2020 WL 6194040, at *3 (D.N.J. Oct.

---

[2]     The definition of a person includes a company.  1 U.S.C. § 1; *see also Renda*, 709 F.3d at 479 n. 5.

22, 2020) ("Section 3713 places personal liability on an executor of an estate who pays the debts of the estate, or distributes assets to himself, before paying a claim of the United States.").

The United States has alleged each element of a claim under 31 U.S.C. § 3713(b). Neuberger is a corporate officer, specifically the president of Lehcim.  Compl. ¶ 4.  Neuberger had knowledge or notice of Lehcim's tax debt because he received the notice of deficiency.[3]  *Id*. ¶¶ 9, 11.  Neuberger transferred over $2.6 million of Lehcim's money to third parties.  *Id*. ¶ 13. Lehcim's sole account—a commingled client trust account maintained by Neuberger, Quinn, Gielen, Rubin, & Gibben P.A.—showed a zero balance after those transfers.  *Id*. at ¶¶ 14, 15. Neuberger drained the account, leaving the company insolvent with nothing for the United States.  He denies none of these allegations. This is exactly the type of behavior that the Federal Priority Statute is designed to avoid.  *See, e.g.*, *Renda*, 709 F.3d at 483 ("The Priority Statute was designed to induce a debtor and its representatives to pay the debts of the government first or, at a minimum, to preserve a debtor's assets pending resolution of any dispute regarding the government's claim.").

II.    **The Federal Priority Statute controls here because this is not a lien priority case.**

Neuberger generally asserts that the Federal Priority Statute does not apply to federal tax debts by misinterpreting Supreme Court precedent and several other cases.  His argument is wrong when we review the plain text of section 3713.  Nothing in the text of section 3713 says it is limited to nontax claims.  31 U.S.C. § 3713.  It instead protects the United States' "claims," which are defined broadly in the general definitions of section 3701(b).  Indeed section 3701,

---

[3]     As explained below, Neuberger had notice even earlier.  A notice of deficiency is near the very end of the audit process and provides the taxpayer with 90 days to petition the Tax Court.  26 U.S.C. §§ 6212-6214.  If the taxpayer does not petition the Tax Court or the Tax Court agrees with the deficiency, then the IRS may assess the deficiency.  26 U.S.C. § 6215. That assessment gives rise to a federal tax lien.  26 U.S.C. §§ 6321-6322.

which sets forth definitions and applicability of the provisions in that Chapter, defines "nontax" and said other sections of that Chapter did not apply to taxes.  31 U.S.C. § 3701(a)(8), (d). Congress knew how to exempt taxes from the Federal Priority Statute and did not do so.  *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018) ("Had Congress likewise intended [that section] to have such an effect, it knew how to say so."); *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.").

Neuberger ignores the plain language and applicability section of 31 U.S.C. § 3701. Instead, Neuberger says the Supreme Court's decision in *United States v. Estate of Romani* means the Federal Priority Statute does not apply to actions to recover tax debts from the personal representative of an insolvent taxpayer under 31 U.S.C. § 3713(b).[4]  Mot. at 5-7.  The Court said no such thing.

The issue in *Estate of Romani* was a question of priority, specifically: whether a judgment lien recorded under state law was superior to the United States' as-yet-unrecorded statutory tax lien.  Under 26 U.S.C. § 6323(a), a federal tax lien does not take priority over a perfected, judgment lien until the notice of federal tax lien is publicly recorded. 26 U.S.C. §§ 6323(a)-(c).  The Supreme Court held that the judgment lien was superior to the United States' unrecorded tax lien under Section 6323(a).  *United States v. Est. of Romani*, 523 U.S. 517, 530 (1998). And the Court rejected the argument that the more general Federal Priority Statute established priority in that case because "specific policy embodied in a later federal

---

[4]     Neuberger cites extensively from the syllabus of *United States v. Estate of Romani* (Mot. at 5), which is not part of the decision of the Supreme Court.  *United States v. Est. of Romani*, 523 U.S. 517, 517 n. * (1998) ("The syllabus constitutes no part of the opinion of the Court."); *see also United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337 (1906) ("[T]he headnote is not the work of the court, …. It is simply the work of the reporter[.]").

statute [the Tax Lien Act] should control our construction of the priority statute[.]" *Id.*; *see also United States v. Russell*, 2002 WL 31174181, at *3 (E.D. Mich. Aug. 22, 2002) ("[T]he Supreme Court held that because § 6323 specifically addresses judgment lien creditors (and others, for instance, secured creditors), the Government cannot rely on § 3713."). The Supreme Court never held or even stated *in dicta* that federal tax liens were completely exempted from the Federal Priority Statute.

Read in its proper context, Neuberger has not and cannot tie *Estate of Romani* to this matter or show how it would mean the United States failed to state a claim. There are no alleged lien priority issues here in the Complaint. And Neuberger does not allege the purported lenders he paid ahead of the United States had liens at all, let alone perfected, recorded ones. Nor does he allege that they fall into any of the other enumerated categories of debts that may be superior to the United States unless a Notice of Federal Tax Lien is filed. In short, he alleges Section 6323 should apply, but alleges no reason why it would save him from liability. In the absence of a judgment lien or other lien accorded priority under § 6323, the general rule of "first in time is first in right" governs the priority of a federal tax lien. *United States v. Kimball Foods, Inc.*, 440 U.S. 715, 720-21 (1979). The United States' lien arises upon assessment. Because the transfers occurred prior to assessment, lien priority is not relevant, and the Federal Priority Statute governs.

Neuberger cites four other cases to assert the Federal Priority Statute does not apply to tax debts. *See* Mot. at 7 n.4. These cases are inapposite. And in fact, two of those four cases support the United States' position more than Neuberger's. In *Straus v. United States*, the Seventh Circuit held that the Federal Priority Statute applied because (like the case here) the other creditor did not "fall within the specifically enumerated categories in" 26 U.S.C. § 6323.

196 F.3d 862, 866 (7th Cir. 1999).  Similarly, in *Law Offices of Jonathan A. Stein v. Cadle Co.*, the Ninth Circuit applied the Federal Priority Statute because "the provisions of § 6323 do not apply."  250 F.3d 716, 720 (9th Cir. 2001).  These cases directly support the United States' interpretation of *Estate of Romani.*

The other two post-*Estate of Romani* cases that Neuberger relies on are simply not applicable.  One did not consider the Federal Priority Statute at all, and the other dealt with secured debts that were addressed by 26 U.S.C. § 6323.  *The Trane Co. v. CGI Mech., Inc.*, 2010 WL 2998516, at *4 (D.S.C. July 28, 2010) (not analyzing the Federal Priority Statute); *United States v. Krasicky*, 2016 WL 1242387, at *6 (E.D. Mich. Mar. 30, 2016) (involving a "secured interest").

More important to the current motion are the multiple cases Neuberger omits from his motion, holding the Federal Priority Statute applies to tax debts if the debtor is insolvent and 26 U.S.C. § 6323 does not create an exception. *See, e.g.*, *Est. of Lee*, 2022 WL 3594523, at *1 ("When an executor transfers property before satisfying a known estate tax, the executor may be held personally liable" under the Federal Priority Statute); *United States v. Russell*, 2002 WL 31174181, at *3 (E.D. Mich. Aug. 22, 2002) (holding that the United States "is entitled to priority over other creditors [under the Federal Priority Statute] except 'purchaser[s], holder[s] of a security interest, mechanic's lienor[s], or judgment lien creditor[s]' and those others listed in § 6323(b)").

This Court should follow the lead of these courts as to the appropriate  –  and limited – interpretation that the priority provisions of 26 U.S.C. § 6323 overrides the Federal Priority Statute only when the competing lien is specifically protected by § 6323.

**III.    The United States' claim against Lehcim arose, at the latest, when the Notice of Deficiency was issued.**

Neuberger argues that he cannot be held personally liable for any transfers that took place before the IRS assessed its taxes against Lehcim.  Mot. at 7 to 9.  Federal tax assessments define when the IRS can start to collect a debt using its administrative tools like liens and levies.[5] 26 U.S.C. §§ 6321-6322, 6331.  But the Federal Priority Statute is not that narrow.

For purposes of the Federal Priority Statute, a claim is "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal Agency."  31 U.S.C. § 3701.  This includes federal tax liabilities.  *See, e.g.*, *S.E.C. v. Credit Bancorp., Ltd.*, 297 F.3d 127, 131 (2d Cir. 2002) ("The Federal Debt Priority statute provides the federal government, in certain circumstances, with priority over other claimants as to the payment of debts, including tax debts, owed by an insolvent debtor."); *Coppola*, 85 F.3d at 1020 ("There is no question that taxes owed to the United States fall within the scope of a 'claim of the Government' under the statute's broad terms."); *Est. of Lee v. Comm'r of Internal Revenue*, 2021 WL 3048393, at *3 (T.C. 2021), *aff'd*, 2022 WL 3594523 (3d Cir. Aug. 23, 2022) (holding that executor was personally liable under the Federal Priority Statute for assets he transferred after receiving a notice of deficiency).

Personal liability for the United States' claim arises under 31 U.S.C. §3713(b) when the representative has actual knowledge of the United States' claim or is on notice of facts that

---

[5]    An assessment by the IRS is "essentially a bookkeeping notation" in which the IRS "establishes an account against the taxpayer on the tax rolls."  *E.g.*, *Laing v. United States*, 423 U.S. 161, 170, n. 13 (1976).  That does not mean a tax debt is not due before the assessment or that the assessment is necessary for a tax to be due.  A tax is due at the close of a tax year.  *E.g.*, *Lewis v. Reynolds*, 284 U.S. 281, 283, *modified*, 284 U.S. 599 (1932); 26 U.S.C. § 6601 (interest accrues on a tax liability starting on the date that the tax return is due).

would lead a reasonable prudent person to inquire as to the existence of the claim before making the challenged distribution or payment.  *See, e.g.*, *Coppola*, 85 F.3d at 1020; *Leigh v. Comm'r of Internal Revenue*, 72 T.C. 1105, 1109–10 (1979) ("It is this knowing disregard of the debts due to the United States that imposes liability on the fiduciary, to the extent of the value of the assets distributed after knowledge of the debt was obtained.").

Knowledge of a notice of deficiency or even an audit by the IRS prior to a notice of deficiency being issued is sufficient to establish notice.  *See, e.g.*, *Coppola*, 85 F.3d at 1020 (holding that executor had notice of the tax debt two years prior to the notice of deficiency being issued because he was involved in "discussions and negotiations … about an alleged tax deficiency"); *Allen v. Comm'r*, 1999 WL 1063545, at *10-11 (T.C. 1999) (holding that executor "knew the estate owed estate and income taxes and additions to tax" because he knew the estate was worth $11.6 million and the executor was "highly educated and sophisticated in business matters"); *Forehand*, 1993 WL 533995, at *5 (holding that executor who transferred all remaining assets of an estate after receiving a notice of deficiency was personally liable under 31 U.S.C. § 3713(b)); *Est. of Frost v. Comm'r*, 1993 WL 75053, at *16 (T.C. 1993) (holding that "a letter from the Estate's law firm indicating that the value of the estate 'may be undertaxed'" and a letter from the IRS "advising that [the IRS] had begun an examination of the Estate's tax liability" was sufficient to put the executor on notice of the need to inquire prior to distributing the estate's assets).

The Complaint alleges that Neuberger knew of Lehcim's unpaid tax liabilities in or before November 2019, when he received the Notice of Deficiency.  Compl. ¶ 11.  After learning of the United States' claim for unpaid tax liabilities, Neuberger transferred over $2.6 million of

Lehcim's funds to repay purported loans from third parties.  *Id*. at 13.  That is all that is required to establish personal liability under the Federal Priority Statute.

**IV.    The Federal Priority Statute applies when a company pays other creditors prior to the United States when a company is insolvent, regardless of whether there is an "insolvency proceeding."**

Neuberger mischaracterizes cases and internal IRS documents to argue that the Federal Priority Statute only applies if there is "an insolvency proceeding."  Mot. at 9-10.  The term "insolvency proceeding" appears nowhere in the statute, or the cases interpreting it: Neuberger has simply made it up. And though he also fails to define what an insolvency proceeding is, he appears to be arguing that the Federal Priority Statute applies only when there is a probate or receivership proceeding.  The Federal Priority Statute, Supreme Court precedent, and the actual documents Neuberger cites do not support him.

The Federal Priority Statute does not say or even suggests that it applies only in "insolvency proceedings" (like a bankruptcy, receivership, or assignment for the benefit of creditors).  Instead, as the Supreme Court explained *in the very cases on which Neuberger relies*[6], the Federal Priority Statute applies when an insolvent debtor "makes a voluntary assignment of his property, *or* a case in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, *or* a case in which an act of bankruptcy is

---

[6]     Both of the cases relied upon by Neuberger analyzed a prior version of the Federal Priority Statute, which read: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."  *See United States v. State of Oklahoma*, 261 U.S. at 257; *Bramwell v. U.S. Fid. & Guar. Co*., 269 U.S. 483, 486 (1926).

committed." *United States v. State of Oklahoma*, 261 U.S. 253, 259–60 (1923) (emphasis added); *see also Bramwell v. U.S. Fid. & Guar. Co.*, 269 U.S. 483, 488-89 (1926) (Federal Priority Statute applies in "all cases in which an insolvent debtor makes an assignment of his property"). Neuberger's transfer of funds to repay purported loans was a voluntary assignment of property.

The IRS Chief Counsel Advice Memo and the Internal Revenue Manual provision Neuberger cites do not state that the Federal Priority Statute only applies in the context of an insolvency proceeding either.[7] They say the opposite. The IRS Chief Counsel Advice memo notes that the Federal Priority Statute applies, among other times, when "a person indebted to the Government is insolvent" and "the debtor makes a voluntary assignment of property." 2000 IRS CCA LEXIS 170, *3 (I.R.S. Nov. 22, 2000). Likewise, the Internal Revenue Manual notes that the Federal Priority Statute applies to "general assignments for the benefit of creditors (a debtor transfers all property to an assignee)." IRM 5.17.13.2.2, 2007 WL 9244358; *see also* IRM 34.4.1.7(1), 2007 WL 9250131 ("Where there are tax liabilities in a non-bankruptcy insolvency, the Government's right to priority under 31 U.S.C. § 3713(a) should be considered, especially when the Government does not have a tax lien to rely on for collection.").

Finally, courts repeatedly apply the Federal Priority Statute outside of an insolvency proceeding when a company transfers its assets or pays other creditors prior to paying a claim of the United States outside of an insolvency proceeding. For example, in *United States v. Renda*,

---

[7] The IRS Chief Counsel Advice memo and Internal Revenue Manual do not have the force of law. *See, e.g.*, *Est. of Lee v. Comm'r of Internal Revenue*, 2022 WL 3594523, at *2 (3d Cir. Aug. 23, 2022) ("The [Internal Revenue] Manual is not a regulation with the force of law. And it does not confer rights on taxpayers.") (citation and quotation omitted); 26 U.S.C. § 6110(k)(3) ("Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent."); *Id*. § 6110(b)(1) ("The term 'written determination' means a ruling, determination letter, technical advice memorandum, or Chief Counsel advice.").

the Fifth Circuit held that a company president who transferred the assets of the company to its unsecured creditors was personally liable under the Federal Priority Statute.  709 F.3d at 477-78, 487.  The claims in that case mirror the claims here, and the Fifth Circuit mentioned nothing about any nebulous "insolvency proceeding" requirement. *Renda* is by no means the only such case. There are many more.[8]

The statute and the case law agree: When Neuberger knew that Lehcim was insolvent and had a claim owed to the United States, and he then transferred the assets of Lehcim to other creditors instead of paying the United States' claim (Compl. at ¶¶ 9, 13-15) Neuberger became personally liable for Lehcim's debt to the United States.


//


//


//


---

[8]     The Ninth Circuit held in *United States v. Cole* that an escrow agent was personally liable under the Federal Priority Statute when he used funds received from the sale of the company's business to pay creditors instead of paying the company's federal tax debt.  733 F.2d at 653-54. *See also United States v. Moriarty*, 8 F.3d 329, 331 (6th Cir. 1993) (Federal Priority Statute may apply when company's attorney used the funds of the company to pay its creditors when he knew that the company was indebted to the United States); *United States v. Bridle Path Enter., Inc.*, 2001 WL 1688911, at *4 (D. Mass. Dec. 4, 2001) (company representatives are personally liable for the government debts because they made a voluntary assignment of property to themselves or another entity at a time the company was insolvent instead of paying the government debts); *United States v. Coyne*, 540 F. Supp. 175, 179–80 (D.D.C. 1981) (corporate officer "assigned" corporation's assets to himself to avoid payment of corporate debt to the United States).

**CONCLUSION**

The United States has properly alleged each element of a claim under 31 U.S.C. § 3713(b), and none of Neuberger's arguments have any merit.  Therefore, the United States requests that the Court deny Neuberger's motion for summary judgment.


Dated: February 8, 2023                              Respectfully submitted,

                                                     DAVID A. HUBBERT
                                                     Deputy Assistant Attorney General

                                                     */s/ Kristina M. Portner*
                                                     RYAN O. MCMONAGLE
                                                     KRISTINA M. PORTNER
                                                     Trial Attorneys, Tax Division
                                                     U.S. Department of Justice
                                                     P.O. Box 227
                                                     Washington, D.C.  20044
                                                     202-307-1355 (ROM)
                                                     202-514-0451 (KMP)
                                                     202-514-6866 (f)
                                                     Ryan.Mcmonagle@usdoj.gov
                                                     Kristina.M.Portner@usdoj.gov