IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | * | |
| Plaintiff, | * | |
| vs. | * | Case No. 1:22-CV-02977-GLR |
| ISAAC M. NEUBERGER, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY OF DEFENDANT NEUBERGER
IN SUPPORT OF HIS MOTION TO DISMISS**

**I.   Introduction**

In the first sentence of its Opposition, the United States boldly proclaims that "Federal law requires insolvent debtors to pay claims of the United States before paying other creditors." It cites no case to support this over-broad assertion because no case has gone that far. Instead, the caselaw follows the statute, imposing liability only when (A) the debtor is insolvent **and** one of three specifically identified circumstances has occurred, (see 31 U.S.C. § 3713(a)(1)(A)(i), (ii) and (iii)), **or** (B) "the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B).   Thus, "the application of the federal priority statute has been confined almost exclusively to insolvent decedent estates, general assignments for creditors, general equity receiverships, bankruptcy reorganizations, state-supervised liquidations of regulated corporations, and comparable collective proceedings for the administration or distribution of the assets of an insolvent."  William T. Plumb, Jr., *Federal Liens and Priorities – Agenda for the Next Decade*, 77 Yale L.J. 228, 238 (1967).   The Opposition attempts to truncate the requirements of  the statute because the United States knows

the facts it has alleged against Mr. Neuberger do not fit within either A or B, mandating dismissal of the case.

Many of the cases cited in the United States' Opposition were decided on the basis of 31 U.S.C. § 3713(a)(1)(B), which, as noted above, provides for priority if "the estate of a deceased debtor, in the custody of an executor or administrator, is not enough to pay all the debts of a debtor." Obviously, Lehcim Holdings, Inc. was not an estate of a deceased debtor, and Mr. Neuberger was not an executor or an administrator. Subsection B is an entirely different subsection of the statute from subsection A, with different elements and a different rationale. It does not apply here, and the cases applying it do not assist the United States in avoiding dismissal.

The Opposition does attempt to argue that the Complaint fits within one, (and only one) subsection of 31 U.S.C. § 3713(a)(1)(A) because it claims that Mr. Neuberger made a "voluntary assignment of property." Section 3713(a)(1)(A)(i) imposes liability on an insolvent debtor when it, "without enough property to pay all debts makes a voluntary assignment of property," and does not first pay the claim of the United States Government. But, the facts alleged in the Complaint clearly do not satisfy this subsection of the statute. The Complaint merely alleges that Mr. Neuberger paid some of Lehcim's bills while Lehcim was allegedly insolvent and while it allegedly owed a tax debt to the Government. But, a "voluntary assignment of property," (also known as a "voluntary assignment for the benefit of creditors"), is a well-known term of law. It refers to proceedings where a debtor does not claim bankruptcy, but appoints a receiver, trustee or other representative to take custody of its assets and distribute them and pay the outstanding debts. The allegations in the Complaint are utterly insufficient to demonstrate that a "voluntary assignment of property" was made by Lehcim within the meaning of subsection (a)(1)(A)(i).

Stated another way, paying bills in the ordinary course of business does not and cannot constitute a "voluntary assignment of property" under the Federal Priority Statute.

The Government claims that it "has alleged each element of a claim under 31 U.S.C. § 3713(b)." Opposition at 4. It says it has done so because Mr. Neuberger was a corporate officer of Lehcim, and paid some of Lehcim's creditors with knowledge that Lehcim was insolvent, with a tax deficiency. *Id.* But those allegations are plainly insufficient to set forth a viable claim. *United States v. Russell*, relied upon by the Government in its Opposition states that, "liability under § 3713(b) is predicated upon a priority granted by § 3713(a). If the Government is not entitled to a priority granted by § 3713(a), [the defendant] cannot be held personally liable under § 3713(b), as a matter of law." No. 00-75597 at *1. So it is here. Since the Government is not entitled to priority under § 3713(a), its claim against Mr. Neuberger must fail.

There is an additional reason that the Complaint fails to state a cause of action against Mr. Neuberger. The "claim" the United States posits to satisfy § 3713's requirement of "[a] claim of the United States Government" is a tax claim. That matters here because the United States Supreme Court has held that "the Tax Lien Act of 1966 [is] the governing statute when the Government is claiming a preference in the insolvent estate of a delinquent taxpayer." *United States v. Estate of Romani*, 523 U.S. 517, 532 (1998). In *Estate of Romani*, the Supreme Court rejected the Government's argument that § 3713 established priority, because the explicit terms of the Tax Lien Act controlled. That is not just Mr. Neuberger's interpretation, it is the Government's as well. See Opposition at 5-6.

Despite that admission, the Government refuses to acknowledge the effect that the primacy of the Tax Lien Act has on its case. The Supreme Court's rationale for declining to allow the United States to use § 3713 as a means to backstop its lack of a viable tax lien, was that

Congress has repeatedly sought to eliminate the Internal Revenue Service's use of "secret liens" to prioritize tax debts.  Here, what the Government seeks to do is even worse.  It knows that it did not have a valid tax lien at the time of the transfers - "The United States' lien arises upon assessment," Opposition at 6, and the assessment was made months after the last transfers – but just as it tried in *Estate of Romani*, it seeks to backstop its shortcomings by relying on § 3713.  It should not be allowed to do so, and the case should be dismissed.

None of the arguments advanced by the United States have any merit.  There is no legal basis to impose individual liability on Mr. Neuberger for paying the corporate debts of Lehcim Holdings, Inc.  For the reasons stated below, this Court should dismiss the Complaint with prejudice.

## II. The United States' Does Not and Cannot Satisfy the Statutory Requirements of the Federal Priority Statute.

It is very clear that the United States wants to expand the reach of the Federal Priority Statute.  But, its Complaint does not comport with the requirements of the statute.  The United States' novel (and overly-aggressive) collection tactics should, therefore, be rejected.

The United States alleges that (1) Mr. Neuberger was the President of Lehcim Holdings, Inc. ("Lehcim"), (2) Lehcim received a Notice of Deficiency issued by the Internal Revenue Service contending that additional taxes were due, (3) after receipt of the Notice of Deficiency, Mr. Neuberger transferred funds to pay loans due to third parties, and (4) these transfers occurred when Lehcim was or became insolvent.  In the view of the United States, these allegations, if proven, are sufficient to hold Mr. Neuberger liable for Lechim's tax liability.  However, the Internal Revenue Service cannot deny that (1) Lehcim was not liable to the United States at the time the debt payments were made, (2) the United States did not have any lien at that time to which priority could be assigned, and (3) there were no "insolvency proceedings" – e.g., an

actual assignment for the benefit of creditors – or any other event at that time that would satisfy 31 U.S.C. § 3713(a)(1)(A). These facts are fatal to the Complaint.

The Federal Priority Statute sets forth specific requirements that trigger its application. For example, the statute can be triggered by an "act of bankruptcy" (31 U.S.C. § 3713(a)(1)(A)(iii)) or an attachment of property (31 U.S.C. § 3713(a)(1)(A)(ii)).  There is nothing in the Complaint that alleges those triggering events, nor could there be. Instead, the United States apparently believes that a transfer of funds by a corporation's president to pay loans from third parties satisfies the requirements of 31 U.S.C. § 3713(a)(1)(A)(i) where "the debtor without enough property to pay all debts makes a voluntary assignment of property."  In support of its position that debt payments to third parties by a corporate officer trigger the statute, the United States cites only to a few cases: *Renda*, *Tyler*, and *Estate of Kelley*.  These cases are not applicable here.

Setting aside that *Estate of Kelley* is an unpublished opinion, the application of the Federal Priority Statute there was based on a different section of the Statute that is clearly inapplicable in this case.  The statutory provision at issue in *Estate of Kelley* – 31 U.S.C. § 3713(a)(1)(**B**) – provides for application of priority if "**the estate of a deceased debtor**, in the custody of the executor or administrator, is not enough to pay all debts of a debtor," which is quite clearly not the allegation here.   Because it was a case about an estate, and thus controlled by section 3713(a)(1)(**B**), *Estate of Kelley* did not require any of the triggering events set forth in section 3713(a)(1)(**A**) to be present.  In that case, the fiduciary was liable for the taxes because she was the executor of her father's estate and distributed all his estate's property to herself instead of paying the Internal Revenue Service. *United States v. Kelley*, No. 3:17-cv-965-BRM-DEA, at *10-11 (D.N.J. Oct. 22, 2020).  In other words, all of the assets were transferred to her

to administer in a representative capacity for her father's insolvent estate and she did not respect those responsibilities.  Application of 31 U.S.C. § 3713(a)(1)(B) to her case was clear. It is equally clear that section 3713(a)(1)(B) has no applicability to Mr. Neuberger.

In another unpublished opinion cited in the Opposition, *United States v. Tyler*, 528 F. App'x 193 (2013), the Court held that an executor of an estate was personally liable under 31 U.S.C. § 3713.  Much like in *Estate of Kelley*, the relevant statutory trigger was different than that which has been alleged in the present case.  Particularly, the Court stated that priority applies "when…the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.' 31 U.S.C. § 3713(a)(1)(B)." *Id.* at 201.  Again, the portion of the statute applied there is irrelevant here because Mr. Neuberger is not an executor or administrator of an estate.  That case also demonstrates that property must be transferred to a fiduciary for the Federal Priority Statute to apply.  *Id.* at 198.  Here, the property in question was never transferred to Mr. Neuberger, which confirms that the United States cannot satisfy the requirements of subsection 3713(a)(1)(A)(i). .

In the sole published opinion cited[1] in support of its contention that the Federal Priority Statute applies here, the United States relies heavily on snippets from *United States v. Renda*, 709 F.3d 472 (5th Cir. 2013).  Again, setting aside other reasons why that case is applicable (*see infra* regarding application of the Federal Tax Lien Act and the requirement for an insolvency proceeding), that case does not support the Government's argument.   In *Renda*, the opinion of the Fifth Circuit was limited to the following issues:

---

[1] The United States starts Section I of the Opposition by reminding the Court that the statute is "almost as old as the Constitution," yet it provides no concrete authority supporting the "straightforward" application of the statute in the manner contended over the more than two centuries it has been in existence.

> Specifically, we are called upon to decide (1) whether the decision of a contracting officer rendered pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 7101 et seq. (the "CDA"), constitutes a "claim" within the meaning of the Priority Statute, and, if so, (2) whether a debtor's representative has "notice" of that claim, necessary to trigger personal liability under the Priority Statute, if he has actual knowledge of its existence but relies on the erroneous advice of counsel as to its validity.

*Renda*, 709 F.3d at 476 (5th Cir. 2013).  Moreover, the opinion of the Magistrate Judge in the circuit court proceedings indicates that a triggering event under 31 U.S.C. 3713(a)(1)(A)(i) had already occurred when the corporate officer acted in a representative capacity and apparently both parties agreed to those facts.  *United States v. Renda*, *et al.*, No. 4:09-cv-368 at *7 (E.D. Tex. Aug. 8, 2011). Indeed, the analysis by the Fifth Circuit in *Renda*, (in accord with every other case on this subject), indicates that a triggering event is still necessary under 31 U.S.C. § 3713(a)(1)(A).  For instance, in citing to *United States v. Coppola*, 671 F.3d 220 (2d Cir. 2012), the Court acknowledged that a corporate officer was rendered liable where he administered debts in a fiduciary capacity (i.e., as executor).  709 F.3d at 1020.  The Court in *Renda* cited other cases holding corporate officers liable where they had assumed responsibility for winding down the corporation pursuant to state dissolution procedures (i.e., insolvency proceedings).  *See, e.g., United States v. Moore*, 423 U.S. 77 (1975) (debts due to United States shall be discharged "in all cases of insolvency" which includes "cases in which a debtor makes a voluntary assignment for the benefit of creditors, and the other situations that § 3466, 31 U.S.C. § 191, now covers"). Moreover, *Renda* cited a Yale Law Journal which provides a helpful summary of how the statute applied, even before *Estate of Romani*:

> Those acts [described in 31 U.S.C. § 3713] , in general, involve a divestment of the debtor's property, and the Supreme Court therefore has generalized in repeated dicta that the "priority does not attach while the debtor continues the owner and in possession of the property," but applies only "when the possession and control of the estate of the insolvent is given to any person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear." Thus the application of the federal

> priority statute has been confined almost exclusively to insolvent decedent estates, general assignments for creditors, general equity receiverships, bankruptcy reorganizations, state-supervised liquidations of regulated corporations, and comparable collective proceedings for the administration or distribution of the assets of an insolvent.

William T. Plumb, Jr., *Federal Liens and Priorities—Agenda for the Next Decade*, 77 Yale L.J. 228, 238 (1967).  It is worth noting that while the United States claims in its Opposition that Mr. Neuberger "made up" the concept that 3713(a)(1)(A) is about insolvency proceedings, Opposition at 10, this is precisely what Mr. Plumb – a noted commentator cited on multiple occasions by the United States Supreme Court – has said.  Indeed, referring to the Federal Priority Statute, he writes that "[a] statutory rule of priority creating no lien but providing the order of distribution of assets is appropriately applicable only in collective proceedings involving all, or substantially all, of a debtor's assets." *Id*.at 249.

While the United States indicates that Mr. Neuberger "denies none of the[] allegations" in the Complaint, that is, of course, not permitted in a Motion to Dismiss.  *See generally* Federal Rule of Civil Procedure 12.  It is the Court's task to determine if the allegations in the Complaint – whether provable or not – are sufficient to constitute a viable claim.  Here, they do not because of  the clear limitations of the Federal Priority Statute as set by the Supreme Court.   As the Court stated in *United States v. Oklahoma*, 261 U.S. 253, 260, 262 (1923):

> Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part. *United States* v. *State Bank of North Carolina*, 6 Pet. 29, 35; *United States* v. *Fisher*, 2 Cranch, 358, 390; *United States* v. *Hooe*, 3 Cranch, 73, 90; *Prince* v. *Bartlett*, 8 Cranch, 431, 433; *Conard* v. *Atlantic Insurance Co.*, 1 Pet. 386, 439; *Brent* v. *Bank of Washington*, 10 Pet. 596, 611; *Field* v. *United States*, 9 Pet. 182, 201. Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property. *Beaston* v. *Farmers' Bank of Delaware*, 12 Pet. 102, 133-135.

> ...
>
> The facts set forth in the complaint do not constitute an act of bankruptcy as defined by the Federal Bankruptcy Act (§ 3a). There is not alleged any conveyance to defraud, or preference through transfer or through legal proceedings, or general assignment for the benefit of creditors. Nor is the case within the meaning of the last clause of § 3a (4) "or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a State . . ." The allegations do not show insolvency within the meaning of § 3466 or of the Bankruptcy Act.

Accordingly, since the United States has not pleaded all required elements to state a claim in this case, a straightforward application of the Federal Priority Statute dictates that it must be dismissed.

**III.   The Federal Tax Lien Act Applies Notwithstanding No Specific Limitations in the Federal Priority Statute.**

The United States also asserts that the Federal Priority Statute applies without limitation to tax claims ("[n]othing in the text of section 3713 says it is limited to nontax claims").[2] Opposition at 4.  Whatever merit this argument may have once had, it has no viability today in the face of the clear dictate of the Supreme Court in *Estate of Romani.*  Since "[t]here are sound reasons for treating the Tax Lien Act of 1966 as the governing statute when the Government is claiming a preference in the insolvent estate of a delinquent taxpayer," *Estate of Romani*, 523 U.S. at 532, the United States' attempt to rewrite the reach of the Federal Priority Statute incorrect.

The United States admits that in *Estate of Romani* "[t]he [Supreme] Court rejected the argument that the more general Federal Priority Statute established priority in that case because

---

[2] Since the Federal Priority Statute predated income taxes by more than a century and has been re-codified without substantive change, it would be difficult for the statute to reference its application to different types of taxes that were not yet in existence when drafted.  *See* U.S. Const. amend XVI (providing for income taxes and ratified in 1913).

'specific policy embodied in a later federal statute [the Tax Lien Act] should control our construction of the priority statute.'" Opposition at 5-6. While the United States apparently understands that the Federal Tax Lien Act controls priority over tax claims – despite its contention on the prior page – it then attempts to change the subject by making the straw man argument that the Supreme Court never held or stated that federal tax liens were "completely exempted from the Federal Priority Statute." Opposition at 6.

But that is not what the Supreme Court said nor is it what Mr. Neuberger contends.[3] Federal tax liens are not "exempted" from the Federal Priority Statute; instead, the Federal Priority Statute is subject to the following mandate of the Supreme Court:

> In sum, nothing in the text or the long history of interpreting the federal priority statute justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien that Congress has said "shall not be valid" in a case of this kind.

523 U.S. at 534 (adding further that "the 1966 amendments to the Tax Lien Act bespeak a strong condemnation of secret liens"). *See id.* at 533 ("Indeed, given our unambiguous determination that the federal interest in the collection of taxes is paramount to its interest in enforcing other claims, it would be anomalous to conclude that Congress intended the priority statute to impose greater burdens on the citizen than those specifically crafted for tax collection purposes."). *See also In re Estate of Romani*, 547 Pa. 41, 50 (Pa. 1997), aff'd by 523 U.S. 517 ("We hold, therefore, that section 6323 limits the operation of section 3713 as to tax debts.") That is, in tax matters, the Federal Priority Statute can only apply where it is not inconsistent with the express

---

[3] Rather than address the significant limitations imposed by *Estate of Romani*, the United States weakly argues that Mr. Neuberger's citations to the case originated in the syllabus or dicta; however, as referenced throughout, the case unambiguously held that the Federal Tax Lien Act governs priority in federal tax matters.

provisions of the Federal Tax Lien Act. Although the United States glosses over it, there was never any lien to which priority could attach – none of the alleged transfers was done in contravention of any rights that the United States had or could have had in that property at the time of the transfers.

Here, the United States did not have any lien and, pursuant to the Federal Tax Lien Act (i.e., 26 U.S.C. § 6323), did not have any interest with which to apply priority in the first place.[4] That is, any priority for federal tax liens is predicated on the existence of a lien. *See Estate of Romani*, 523 U.S. at 534 ("nothing in the text or the long history of interpreting the federal priority statute justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien that Congress has said 'shall not be valid' in a case of this kind"). There was not even a "secret lien" from which priority could be determined. *See also Estate of Romani*, 523 U.S. at 523 (federal government's right to lien on property has been part of federal law since 1865 and lien applies "upon the neglect or failure to pay the tax upon demand," now codified in 26 U.S.C. § 6321). There is no basis in the statute or in case law

---

[4] The United States devotes an entire section of its Opposition to its contention that the issuance of a Notice of Deficiency is relevant to its priority. Opposition at 8-10. However, the Notice of Deficiency is not relevant because there was no insolvency proceeding to which any priority analysis is required. *See, e.g., S.E.C. v. Credit Bancorp, Ltd.*, 297 F.3d 127 (2d Cir. 2002) (involving priority of claims on assets distributed in receivership); *U.S. v. Coppola*, 85 F.3d 1015 (2d Cir. 1996) (dealing with liability of executor and therefore not implicating analysis under 31 U.S.C. § 3713(a)(1)(A)); *Estate of Lee v. Commissioner*, No. 21-2921 (3d Cir. Aug 23, 2022) (distinguishable because it also dealt with executor liability and there was a pre-existing lien under 26 U.S.C. § 6324); *Leigh v. Commissioner*, 72 T.C. 115 (1979) (dealing with executor of estate, similar to *Estate of Lee*); *Allen v. Commissioner*, T.C. Memo. 1999-385 (unpublished) (indicating priority based on 31 U.S.C. § 3713(a)(1)(B)); *Forehand v. Commissioner*, T.C. Memo. 1993-618 (unpublished) (dealing with executor of estate); *Estate of Frost v. Commissioner*, T.C. Memo 1993-94 (unpublished) (dealing with executor of estate and special tax lien under 26 U.S.C. § 6324). To be clear, there is no allegation that Mr. Neuberger was administering an estate or that he was assigned any property of Lehcim under one of the conditions described in the Federal Priority Statute.

to argue that priority attaches to potentially due taxes without a lien.[5] For taxes, the United States can have no priority unless it has a lien first. *See, e.g.,* 26 U.S.C. § 6323 (describing priority in terms of "lien imposed by section 6321"). The United States cannot simply claim that a taxpayer may owe additional taxes in order to prime its lien position and to trump prior liens – this would go drastically beyond the limitations already imposed in *Estate of Romani*. *See, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 720 (1979) (priority for federal taxes based upon statutory lien framework).

In an attempt to buttress its contention that the Federal Priority Statute operates without boundaries, the United States cites to an unpublished opinion from Michigan, *United States v. Russell,* Case No. 00-75597 (E.D. Mich. Aug. 22, 2002), which dealt with whether the United

---

[5] The United States admits the facts that show that its theory does not find basis in the law: "In the absence of a judgment lien or other lien accorded priority under § 6323, the general rule of 'first in time is first in right' governs the priority of a federal tax lien…**The United States' lien arises upon assessment.** Because the transfers occurred prior to assessment, lien priority is not relevant, and the Federal Priority Statute governs." Opposition at 6.

Essentially, the United States argues that, although a perfected lien is required to prime its interest as against certain creditors under *Estate of Romani*, it can use the Federal Priority Statute to override interests of other unsecured creditors even if no tax has been assessed. But, if Congress was concerned with the adverse impact of invisible (or secret) tax liens, it would also be concerned with the impact of the "priority" of taxes that have not yet been assessed at all and may never come to be demanded, as here.

More important, the United States' argument clearly conflicts with *Estate of Romani*. For insolvent taxpayers, the Government's position appears to be that the Internal Revenue Service only needs to assess tax in order to take priority over the classes of creditors enumerated in 26 U.S.C. § 6323(a). (Indeed, its argument seems to suggest that it could trump priority of those classes of creditors under *Estate of Romani* by ***not*** obtaining a lien.) If the United States' argument is accepted, it would give the Government the power to unwind any and all payments made by insolvent debtors to third parties by simply claiming tax is owed. Third parties would have no mechanism to protect themselves from the "secret liens" thus vested with the United States. That is not the law nor should it be.

States could amend its complaint.  In *Russell*, the Court indicated that the Supreme Court in

*Estate of Romani*:

> [E]ngaged in extensive statutory interpretation of the Tax Lien Act and Federal Insolvency Statute, noted that the Tax Lien Act is "the governing statute when the Government is claiming a preference in the insolvent estate of a delinquent taxpayer," 523 U.S. at 532, and specifically held that "nothing in the text or the long history of interpreting the federal priority statute justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien" which Congress provided in 26 U.S.C. § 6321.  ***Put another way, the Supreme Court expressly rejected the Government's argument in Romani that if the Government fails to follow the correct procedures for securing/maintaining its statutorily-authorized tax lien, it can somehow fall back onto 31 U.S.C. § 3713 in order to gain a priority over other secured creditors.***

*Id.* at *1 (E.D. Mich. Aug. 22, 2002) (emphasis supplied).  That Court went on to say that, while *Estate of Romani* established that classes of creditors gain specific priority over the government for its tax claims (even in spite of 31 U.S.C. § 3713), other creditors could lose priority to the government's tax claims under the Federal Priority Statute.  *Id.*  However, that Court also clearly stated that such priority rights of the government would be based upon an encumbrance by a tax lien where "the underlying tax liability still existed."  *Id.*  In other words, at the very least, an invisible lien needs to exist for the United States to have any priority.  But, here and unlike in *Russell*, the United States did not have any tax assessment or any invisible lien during the relevant time period.

Finally, the other cases cited by the United States also support the principle that a lien is necessary before priority rules become applicable.  For instance, in *Straus v. United States*, the United States' lien was found to have priority over other liens where a retailer had been liable, prior to assignment of its assets for the benefit of creditors, to both the United States and other creditors.  196 F.3d 862, 863 (7th Cir. 1999).  That is, the United States had a clearly established lien against the taxpayer and there was an actual "assignment" within the coverage of 31 U.S.C.

§ 3713. Moreover, in *Law Offices of Jonathan A. Stein v. Cadle Co.*, the Court also stated that a lien was necessary in order to provide priority to the United States:

> The IRS is given the authority to assess taxes, and must do that in a particular manner. *See* 26 U.S.C. §§ 6201- 6204. Thereafter, it must give notice to the taxpayer and demand payment. *See id.* § 6303. If the tax is not paid, the lien provided for in 26 U.S.C. § 6321 springs into being. Under § 6323, notice of that "secret lien" against the taxpayer's assets must be given. In fact, *Romani* involved just that sort of situation.

250 F.3d 716, 719 (9th Cir. 2001) (confirming that the Tax Lien Act is the governing statute where delinquent taxes are involved and bemoaning the "secret lien as a substitute for the expressly authorized tax lien"). *See also Simmons v. Spiekhout (In re Estate Simmons)*, No. 1:15-cv-01097-TWP-MPB, at *9 (S.D. Ind. July 31, 2017) (applying *Estate of Romani* to determine priority of "Government's tax liens" in property of taxpayer); *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960) ("…once the tax lien has attached…we enter the province of federal law, which we have consistently held determines the priority of competing liens…"). Here, it is clear that the United States had no such lien until, at the earliest, it made its assessment against Lehcim (after the alleged transfers). *See, e.g., United States v. Allison*, 587 F. Supp. 3d 1015, 1034 (E.D. Cal. 2022) (requiring knowledge of assessment, and lien, in order to be subject to Federal Priority Statute). The Internal Revenue Service is armed with many procedural mechanisms to make prompt assessments and secure liens in situations like this, but it apparently chose not to do so here.[6]

---

[6] The availability of numerous provisions within the Internal Revenue Code confirms the necessity for an underlying assessment before application of any lien or priority provisions. *See, e.g.,* 26 U.S.C. § 6851 (allowing for immediate assessment if taxpayer designs to depart the United States, remove property, conceal himself or property, or to take other acts prejudicial to collection); 26 U.S.C. § 6861 (providing for immediate assessment if collection of a deficiency would be in jeopardy); 26 U.S.C. § 6324 (providing for automatic creation of special tax lien encumbering all property of decedent or gift or for estate and gift taxes to prevent inability to

IV.     **Despite the United States' Expansive "Interpretation" of the Federal Priority Statute, It Does Not Apply to Every Transfer Made by an Insolvent Person – One of the Statutory Conditions in 31 U.S.C. § 3713(a) Must Also Apply.**

The United States contends that the Federal Priority Statute applies to all payments made when a company is insolvent and a debt is owed to the government. For good reason, this broad-sweeping conclusion does not have any support in the law. In order to support this faulty premise, the United States contends that the term "insolvency proceeding" was "simply made [] up" by Mr. Neuberger in this case. However, a quick review of the statute and caselaw shows that the United States' analysis is incorrect. Moreover, it is very clear why the statutory language in the Federal Priority Statute only operates in the context of "insolvency proceedings" – because, otherwise, any unknowing person dealing with an insolvent debtor at any point in time – could apparently be subject to the reach of the statute and agents of the United States.

The United States cannot simply eliminate one of the key elements of the statute to trigger liability. Although not referred to as "insolvency proceedings" within the statutory text, that is exactly what the conditions in 31 U.S.C. § 3713(a)(1)(A) are. *See, e.g., United States v. Oklahoma*, 261 U.S. 253, 260-62 (1923) (dismissing claim of the United States because assignment by bank in "insolvency" under Oklahoma law did not come within the types of proceedings in the priority statute); *Federal Liens,* 77 Yale L.J. at 237 ("insolvency must be manifested by one of the following formal acts" enumerated in the statute which "involve a divestment of the debtor's property"); *Bramwell v. United States Fidelity & Guar. Co.*, 269 U.S. 483, 488 (1926)[7] ("no evidence can be received of the insolvency of the debtor until he has been

---

collect from transfers); 26 U.S.C. § 6901 (providing for assessment and collection from certain transferees and fiduciaries).

[7] Apparently in an effort to distance itself from these clear holdings, the United States indicates that both of these cases "analyzed a prior version of the Federal Priority Statute…" Opposition at 10. While that is true, there has been no change to the statute since then that impacts this case.

divested of his property in one of the modes stated; and that, 'whenever he is thus divested of his property, the person who becomes invested with the title, is thereby made a trustee for the United States, and is bound to pay their debt first…'") (citing *Beaston v. The Farmers' Bank of Delaware*, 37 U.S. 102 (1838)).

That is, the statute only applies if: (i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed. 31 U.S.C. § 3713(a)(1)(A). *See King v. United States*, 379 U.S. 329, 334-34 (1964) (in describing priority statute, indicated it was "extended to voluntary assignments for the benefit of creditors"). Accordingly, the United States is flatly wrong when it posits that "[t]he Federal Priority Statute does not say or even suggests [*sic*] that it only applies in 'an insolvency proceeding' (like a bankruptcy, receivership, or assignment for the benefit of creditors.)" Opposition at 10. This is not a matter of statutory interpretation; it is a clear statutory mandate that has been repeatedly affirmed by the Supreme Court.

In any event, in its only argument that it has alleged a condition that could trigger coverage of the statute, the United States contends that "Neuberger's transfer of funds to pay purported loans was a voluntary assignment of property" described in 31 U.S.C. § 3713(a)(1)(i). Opposition at 11. It was not. "Voluntary assignment" is a term of art – it describes a proceeding common in state law known as a "voluntary assignment for the benefit of creditors" or a "general assignment for the benefit of creditors." In these proceedings, the debtor does not claim bankruptcy but instead vests a receiver, trustee, or assignee with the power to administer and distribute property to satisfy outstanding debts. *See, e.g. Probleso v. Boyd Co.,* 287 U.S. 518

---

All re-codifications have kept the same operative language. *See In re Metzger*, 709 F.2d 32, 34 (9th Cir. 1983) (language in current statute is "substantially identical" to § 191 with respect to provisions relevant here).

(1933) (describing voluntary assignment proceedings); *United States v. Gotwals*, 156 F.2d 692, 695 n.3 (10th Cir. 1946) ("A voluntary assignment has been defined as a transfer without compulsion of law by a debtor of his property to an assignee in trust, to apply the same or the proceeds thereof to the payment of his debts and to return the surplus, if any, to the debtor."); *Brown v. Coleman*, 318 Md. 56, 65 (Md. 1989) (priority does not attach until debtor divested of property and person vested becomes trustee for United States).

      The meaning of a "voluntary assignment" within the context of the Federal Priority Statute is consistent with this general concept and was described at length in *United States v. Butterworth Corp.*, 269 U.S. 504 (1926) (consent receivership was "voluntary assignment" because "appointment of the receivers divested the Company from possession and control of all its property" and it accomplished same purposes as bankruptcy); *United States v. Moore*, 423 U.S. 77 (1975) (using the terms "voluntary assignment" and "voluntary assignment for the benefit of creditors" interchangeably); *In re Belkin*, 358 F.2d 378, 381 (6th Cir. 1966) (bankruptcy petition deemed a "voluntary assignment" because it was a "assignment by operation of law"); *In re N2N Commerce, Inc.*, 405 B.R. 34, 42 (Bankr. D. Mass. 2009) (assignment for the benefit of creditors is state law counterpart to Chapter 7 liquidation without all requisite formalities); *Conard v. The Atlantic Insurance Company*, 26 U.S. 386, 438-39 (1828) (insolvency by statute relates to "general divestment of property" including "voluntary assignment [of property] for the benefit of his or her creditors"; "it is indispensable that the fund should pass to [the assignees]" to trigger the statute). In other words, there is simply no basis for the United States' contention that a payment of a creditor in the normal course of business is a "voluntary assignment" as referenced in subsection 3713(a)(1)(A)(i) of the Federal Priority

Statute.[8] *See Estate of Romani*, 523 U.S. at 526 (statute provides right of prior payment of funds "in the hands of the assignees").

While the law is clear on this point, it is worth reiterating that the United States' proposed extension of this law also runs counter to established policies of the Internal Revenue Service and Department of Justice. Even though the United States claims that these policies "say the opposite" [i.e., that Federal Priority Statute is not limited to an insolvency proceeding], here is what the policy manual of the Internal Revenue Service says, in full:

> Section 3713(a)(1)(A)(i) applies where the debtor's property is transferred to a fiduciary in a legal proceeding brought to liquidate the insolvent debtor's property and pay the debtor's debts. *United States v. Oklahoma*, 261 U.S. 253 (1923); *Bramwell v. United States Fidelity and Guaranty Co.*, 269 U.S. 483 (1926). Section 3713(a)(1)(A)(i) applies to the following proceedings:
>
> - general assignments for the benefit of creditors (a debtor transfers all property to an assignee)
> - general receiverships (a receiver takes control of all of the debtor's assets)
> - liquidations of insolvent corporations, either judicial (fiduciary appointed by a court) or nonjudicial (officers of the corporation act as the fiduciaries)

---

[8] The United States contends that *Renda* and "many more" cases support its theory that it can unwind any transaction of an insolvent. Opposition at 12. However, all of the cases cited by the United States are consistent with the requirement of an insolvency proceeding. That is, each case involves a situation where a third party was acting in a fiduciary capacity and had been assigned possession and control over funds of the debtor to pay claims of creditors. *See Renda*, 709 F.3d 472, 478 (appointed representative transferred all assets of corporation to unsecured creditors in voluntary assignment); *Cole*, 733 F.2d at 653 (escrow agent deemed assignee for the benefit of creditors when he received funds in liquidation of business); *Moriarty*, 8 F.3d 329 (attorney acting on behalf of debtor liable because he received proceeds after business was dissolved and paid other creditors); *United States v. Coyne*, 540 F. Supp. 175, 179 (D.D.C. 1981) (not dealing with voluntary assignment at all; instead finding that "assignment" by corporate officer to himself constituted an act of bankruptcy triggering application of the Federal Priority Statute). None of these cases support the argument that a corporate officer's payment of a corporate debt while the corporation is insolvent exposes the officer to individual liability to the federal government. To the contrary, they only show that liability can attach once a corporate representative accepts the role of a receiver, (in form or substance), but fails to prioritize payment to the United States. Here, there is no allegation that Mr. Neuberger took on any such role.

IRM 5.17.13.2.2 (07-09-2012). *See also* IRM 5.17.13.11.1 (07-09-12) (priority under 31 U.S.C. § 3713(a) applies to "voluntary assignments for the benefit of creditors" and "[t]he assignee is a fiduciary who can be personally liable"). *See also* Department of Justice, Tax Division Manual, September 2007, available at:

http://https://www.justice.gov/archive/usao/usam/1997/1997USAM_Title%206%20Tax.pdf (accessed February 15, 2023) (priorities under 31 U.S.C. § 3713 are asserted in receivership proceedings, probate proceedings, and in "insolvency proceedings in state courts, the most frequent of which is an assignment for the benefit of creditors," all where a proof of claim is filed). Here, the United States apparently fails to understand that "general assignments for the benefit of creditors" are not the same as payments made to creditors in the ordinary course of business.  The United States now insists that the Internal Revenue Service and Department of Justice have been wrong for more than a decade on this point and claims that this requirement is "nebulous."  Opposition at 12.  The requirements of the statute are not nebulous; they simply are not satisfied here.

Finally, the Internal Revenue Service also analyzed the applicability of the Federal Priority Statute, as follows:

> However even absent a lien, the Service could arguably claim a priority pursuant to the Federal Priority Statute, 31 U.S.C. section 3713(a). The United States is entitled to a priority over other claims when a person indebted to the Government is insolvent and either the debtor makes a voluntary assignment of property, the property of an absent debtor is attached or an "act of bankruptcy is committed." There is an "act of bankruptcy" within the meaning of the insolvency statute where the debtor's property is transferred to a fiduciary in a legal proceeding brought to liquidate the insolvent debtor's property and pay the debtor's debts. Bramwell v. United States, 269 U.S. 483 (1926). In general, the insolvency statute has been confined to proceedings for the benefit of all creditors such as insolvent decedent's estates, general assignments for the benefit of creditors and general receiverships. Plumb, Federal Tax Liens 196-97 (3d ed. 1972).

Chief Counsel Memo, ILM 200110007 (Request for Legal Advice on Receivership) (Nov. 22, 2000). While this analysis may not have precedential value, it underscores that an "insolvency proceeding" is required and that the application of the statute, as argued by Mr. Neuberger, is not "made up" or "nebulous." *See also* IRM 34.4.1.1 (08-11-2004) (non-bankruptcy insolvency proceedings include receiverships, assignments for the benefit of creditors, corporate dissolutions, etc.). Based on the allegations in the Complaint, there is simply no basis for the lawsuit – because none of the triggering events described in Section 3713(a)(1)(A) took place before the alleged transfers were made. Accordingly, it must be dismissed.

## V.     CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: February 22, 2023                          Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ James P. Ulwick*
　　　　　　　　　　　　　　　　　　　　　　　　James Ulwick, Bar No. 00536
　　　　　　　　　　　　　　　　　　　　　　　　Kramon & Graham, P.A.
　　　　　　　　　　　　　　　　　　　　　　　　One South Street, Suite 2600
　　　　　　　　　　　　　　　　　　　　　　　　Baltimore, Maryland 21202
　　　　　　　　　　　　　　　　　　　　　　　　(410) 752-6030
　　　　　　　　　　　　　　　　　　　　　　　　(410) 539-1269 (facsimile)
　　　　　　　　　　　　　　　　　　　　　　　　julwick@kg-law.com

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brandon N. Mourges*
　　　　　　　　　　　　　　　　　　　　　　　　Brandon N. Mourges, Bar No. 29477
　　　　　　　　　　　　　　　　　　　　　　　　CREPEAU MOURGES
　　　　　　　　　　　　　　　　　　　　　　　　1344 Ashton Road, Suite 110
　　　　　　　　　　　　　　　　　　　　　　　　Hanover, Maryland 21076
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: 667-900-9912
　　　　　　　　　　　　　　　　　　　　　　　　Fax: 667-999-0202
　　　　　　　　　　　　　　　　　　　　　　　　brandon@usataxlaw.com