IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| Plaintiff, | * |
| v. | *    Civil No.: BPG-22-2977 |
| ISAAC M. NEUBERGER | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Currently pending before the court are defendant's Motion to Dismiss ("defendant's Motion") (ECF No. 14), plaintiff's Opposition to Defendant's Motion to Dismiss ("plaintiff's Opposition") (ECF No. 15), and the Reply of Defendant Neuberger in Support of His Motion to Dismiss ("defendant's Reply") (ECF No. 16). The issues are fully briefed and no hearing is necessary. Loc. R. 105.6. For the reasons stated herein, defendant's Motion to Dismiss (ECF No. 14) is denied.

**I.  BACKGROUND**

Plaintiff, the United States of America, alleges the following facts in its Complaint. On November 20, 2019, the Internal Revenue Service ("IRS") issued a Notice of Deficiency to Lehcim Holdings, Inc. ("Lehcim"), asserting that Lehcim had tax liabilities resulting from underreported taxes in the years 2010 through 2015. (ECF No. 1 at ¶ 9). As a result, Lehcim owes $2,091,455.16 in unpaid taxes. (Id.) The IRS mailed the Notice of Deficiency to Lehcim's president, Isaac Neuberger ("defendant"), at defendant's law firm Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. (Id. at 7, 11). The Notice of Deficiency provided that the IRS "determined that [Lehcim] owe[s] additional tax or other amounts, or both, for the tax years [2010 through 2015]," and advised

Lehcim that it could "challenge the notice of deficiency by filing a petition with the U.S. Tax Court." (Id. at ¶ 10). Lehcim did not file a petition and tax liabilities were assessed against it on July 13, 2020. (Id. at ¶ 12). Between receipt of the Notice of Deficiency on November 20, 2019 and the assessment of tax liability against Lehcim on July 13, 2020, plaintiff alleges that defendant, in his capacity as president of Lehcim, transferred the balance of Lehcim's account to "repay purported loans from third parties," leaving Lehcim's account with a zero balance. (Id. at ¶¶ 13-14). As a result, Lehcim possesses insufficient assets to repay its tax liability. (Id. at ¶ 15).

On November 16, 2022, plaintiff filed a one-count complaint in this court alleging that, pursuant to the Federal Priority Statute, 31 U.S.C. § 3713 (the "Priority Statute"), defendant is personally liable for the outstanding tax liability it owes to the IRS as a result of the transfer of available funds to third parties with inferior claims, at a time when Lehcim was insolvent. (Id. at 1). On January 25, 2023, defendant filed a Motion to Dismiss for failure to state a claim, arguing that the Federal Tax Lien Act, 26 U.S.C. § 6321 et seq ("Tax Lien Act") applies to the facts alleged, and that plaintiff fails to allege the existence of a claim within the meaning of the statute. Defendant further asserts that, even if the Priority Statute did apply, plaintiff fails to allege facts necessary to state a cause of action pursuant to the Priority Statute. (ECF No. 14-1 at 3). Plaintiff responds that the Priority Statute applies to cases in which the Government does not seek priority for a tax lien against secured creditors, and that an unassessed tax liability is a claim within the meaning of the statute. Accordingly, plaintiff maintains that the Complaint alleges all facts necessary to state a claim pursuant to the Priority Statute. (ECF No. 15 at 6-7).

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to

state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a motion, the court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." Id. at 244. Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted). A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439. Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### III. DISCUSSION

Defendant moves to dismiss plaintiff's Complaint, stating that: (1) any claim of priority related to tax debt must be filed under the Tax Lien Act; (2) no claim existed at the time defendant made the transfers to third party creditors; and (3) the Complaint fails to allege the occurrence of an insolvency proceeding or a voluntary assignment necessary to trigger application of the Priority Statute. (ECF No. 14-1 at 3). Plaintiff counters that in the absence of a tax lien or the existence of other secured creditors, the Tax Lien Act does not apply, that a lien was not necessary for the United States to have a claim entitled to priority under the Priority Statute, and that the Complaint adequately alleges facts to state a claim pursuant to the Priority Statute. (ECF No. 15 at 8-9). At

the Motion to Dismiss stage, the court need only determine whether plaintiff states a claim upon which relief can be granted, not whether plaintiff will ultimately succeed in proving the elements of a claim.  Walters, 684 F.3d at 439.

    **A. <u>Application of the Tax Lien Act</u>**

Defendant contends that the Tax Lien Act, not the Priority Statute, applies to claims involving the collection of unpaid tax debt.  (ECF No. 14-1 at 4).  Specifically, defendant argues that in cases involving tax deficiencies, the government must always first obtain a lien and then apply the priority rules established by the Tax Lien Act.  (Id. at 5-6 (citing United States v. Estate of Romani, 523 U.S. 517, 534 (1998))).  Plaintiff responds that the Priority Statute is not limited to nontax claims, and defendant's creditors did not hold liens or other debts superior to that of the United States which would necessitate application of the Tax Lien Act.  (ECF No. 15 at 10-11).

Defendant argues that this issue was specifically addressed in United States v. Estate of Romani, 532 U.S. 517 (1998), in which defendant contends the Court noted that "in cases involving tax debt, the government must obtain a lien against the taxpayer first and, then, it can apply the priority rules dictated in I.R.C. § 6323 – and not 31 U.S.C. § 3713." (ECF No. 14-1 at 4-6).  Defendant's characterization of the Court's holding in Estate of Romani is far too broad.  In Estate of Romani, the Court was asked to determine whether the United States should be granted priority—with regard to real property—for the deceased's unpaid tax liability pursuant to the Priority Statute, when the IRS had "failed to establish the tax lien prior to a judgment creditor's perfected and secured lien with regard to real property."  532 U.S. at 532.  The Court rejected the United States' argument that the Priority Statute applied and held that the Priority Statute did not authorize the "the equivalent of a secret lien as a substitute for the expressly authorized tax lien." Id. at 534.  The Court's analysis in United States v. Russell, No. 00-75597, 2002 WL 31174181,

4

at *2 (E.D. Mich. Aug. 22, 2002) offers clarification of the application of the Priority Statute following the Court's holding in Estate of Romani. The Court in Russell noted that the Estate of Romani opinion does not preclude application of the Priority Statute in all tax cases, but rather requires the Government "to follow the correct procedures for securing/maintaining its statutorily-authorized tax lien . . . in order to gain a priority over other secured creditors." Id. (emphasis added). Subsection (a) of the Tax Lien Act provides that a tax lien (i.e., a lien imposed by operation of § 6321) "shall not be valid as against [(1)] any purchaser, [(2)] holder of a security interest, [(3)] mechanic's lienor, or [(4)] judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323. As such, "a tax lien will be granted a priority against those four types of creditors only if the tax lien is properly (and timely) filed (and refiled)." Russell, 2002 WL 31174181, at *3.

Here, plaintiff does not allege that a tax lien existed at the time of defendant's alleged transfers. Thus, to the extent any of defendant's creditors fall into one of the four categories enumerated above, the Tax Lien Act applies, and plaintiff fails to state a claim that the Government is entitled to be paid first pursuant to the Tax Lien Act. Id. at *3 (United States was not entitled to be paid before [non-Government creditor's] secured/perfected lien against the property where "tax lien had self-released (i.e., lapsed)."). With regard to any other class of creditors, however, the Priority Statute applies. Id. ("[Section 3713(a)(1)(B) applies to creditors other than the four classes of creditors specifically addressed in § 6323(a)."). The Complaint alleges that defendant "transferred $2,627,280 of Lehcim's funds to repay purported loans from third parties," a category of creditors not specifically delineated in the Tax Lien Act. (ECF No. 1 at ¶ 13). Therefore, accepting the allegations of plaintiff's Complaint as true, plaintiff has adequately alleged facts supporting the application of the Priority Statute. Accordingly, the court denies defendant's

5

Motion to Dismiss (ECF No. 14) to the extent it argues that dismissal is warranted because any claim of priority related to a tax debt must be filed pursuant to the Tax Lien Act.

### B. A "Claim" Within the Meaning of the Priority Statute

Defendant argues that no "claim" existed within the meaning of the Priority Statute at the time the transfers at issue were made, such that there can be no personal liability in this case. (ECF No. 14-1 at 7). Defendant suggests that only a lien—which plaintiff could not legally obtain until after the assessment of the tax deficiency on July 13, 2020—can constitute a "claim" within the meaning of the Priority Statute. (Id.) Plaintiff counters that the plain meaning of the Priority Statute provides a much more expansive meaning of the term "claim," one which clearly encompasses a tax liability, even prior to an assessment of a tax deficiency and the creation of a lien. (ECF No. 15 at 13). The Priority Statute broadly defines a "claim" as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency." 31 U.S.C. § 3701(b)(1). Moreover, the Supreme Court has instructed lower courts to give the Priority Statute "a liberal construction." United States v. Moore, 423 U.S. 77, 86 (1975). Accordingly, "courts have applied the priority statute to Government claims of all types." Id. at 82. Indeed, courts have held that federal tax liabilities fall within the statutory definition of a "claim." See United States v. Coppola, 85 F.3d 1015, 1020 (2d Cir. 1996) ("There is no question that taxes owed to the United States fall within the scope of a 'claim of the Government' under the [priority] statute's broad terms."); United States v. Cole, 733 F.2d at 651, 653 (9th Cir. 1984) (unpaid federal payroll taxes constitutes a claim); Viles v. Comm'r of Internal Revenue, 233 F.2d 376, 380 (6th Cir. 1956) (defendant's tax liabilities were subject to priority even though they were

contested and had not been formally assessed); see also Russell, 2002 WL 31174181, at *3 (lapsed tax lien constitutes a claim).

The Complaint alleges that plaintiff issued a Notice of Deficiency on November 20, 2019, prior to any of the alleged transfers, and that defendant "knew of Lehcim's unpaid tax liabilities on or before November 2019." (ECF No. 1 at ¶¶ 9, 11). Drawing all reasonable factual inferences from the Complaint in plaintiff's favor, the Notice of Deficiency informed defendant of the existence of the government's claim for unpaid tax liability. The Notice of Deficiency stated that the IRS "determined that [Lehcim] owe[s] additional tax or other amounts, or both, for the tax years [2010 through 2015]. (ECF No. 1 at ¶ 10). Thus, the Notice of Deficiency provided the amount of the debt determined by an appropriate official of the Government (i.e., the IRS) to be owed to the United States. See 31 U.S.C. § 3701. "The Priority Statute 'is not to be defeated by unnecessarily restricting the application of the word "claim" within a narrow or technical meaning.'" United States v. Renda, 709 F.3d 472, 484 (5th Cir. 2013) (quoting Moore, 423 U.S. at 81). Plaintiff's allegation that defendant was issued a Notice of Deficiency on November 20, 2019 noting the amount of Lehcim's tax liability and that defendant transferred funds to third parties with that knowledge, adequately alleges the existence of a "claim" within the meaning of the Priority Statute.

### C. **Application of the Priority Statute**

Defendant contends that, assuming the Priority Statute applies, plaintiff's Complaint fails to allege facts sufficient to state a claim pursuant to the Priority Statute. (ECF No. 14-1 at 9-10). Specifically, defendant argues that plaintiff fails to allege facts establishing the occurrence of an "insolvency proceeding," an essential component of the Priority Statute. (Id.) Plaintiff counters that the phrase "insolvency proceeding" appears nowhere in the statute, and that such a proceeding

is not required for the Priority Statute to apply as long as there is a "voluntary assignment of property." (ECF No. 15 at 15-16).  Plaintiff suggests that the Priority Statute applies where, as here, an insolvent debtor makes a voluntary assignment of property by transferring funds to repay purported loans.  (Id. at 16).

The Priority Statute provides, in relevant part:

(a)(1) A Claim of the United States Government shall be paid first when—

> (A) A person indebted to the Government is insolvent and—
>
>> (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
>>
>> (ii) property of the debtor, if absent, is attached; or
>>
>> (iii) an act of bankruptcy is committed[.]

(b) A representative of a person . . . paying any part of a debt of the person . . . before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713.  An entity is "insolvent" within the meaning of the Priority Statute if its "liabilities exceed its assets."  Bramwell v. United States Fid. & Guar. Co., 269 U.S. 483 (1926) (for purposes of the Priority Statute, bank was insolvent where its "assets were less than its debts."); see also Lakeshore Apts., Inc. v. United States, 351 F.2d 349, 353 (9th Cir. 1965) (corporation was insolvent because "its liabilities exceeded its assets").

Section 3713(b), the "representative liability provision, the provision at issue in this case, gives the Priority Statute 'teeth' by making a representative who pays a non-federal debt on behalf of a corporation before paying a federal claim personally liable for the amount paid."  Moore, 423 U.S. at 80.  The term "representative" has been construed to include the corporate officers of a corporation.  United States v. Lutz, 295 F.2d 736 (5th Cir. 1961).  Courts have also recognized an implied knowledge provision, requiring that the representative have "knowledge of the debt owed

. . . to the United States or notice of fact that would lead a reasonably prudent person to inquire as to [its] existence." Coppola, 85 F.3d at 1020.  Thus, in order to state a cause of action pursuant to the Priority Statute, plaintiff must allege that a corporate officer acting on behalf of the corporation, "(1) pa[id] a non-federal debt (2) before paying a claim of the United States (3) at a time when the corporation was insolvent, [and] (4) he ha[d] knowledge or notice of the claim." Renda, 709 F.3d at 480.  Defendant does not challenge that plaintiff alleges that other creditors received payment before the United States at a time when the corporation was insolvent after defendant had knowledge of the United States' claim.

Rather, defendant argues that the Complaint does not allege a threshold event necessary for the application of the Priority Statute, that is, "an insolvency proceeding." (ECF No. 14-1 at 10).  Defendant contends that in order to satisfy the insolvency proceeding requirement, plaintiff must "allege that there was an[ ] insolvency proceeding within which any allegedly insolvent debtor's property was transferred to a fiduciary." (Id. at 11).  Plaintiff maintains that nothing in the Priority Statute requires plaintiff to allege the occurrence of an "insolvency proceeding," a term which "appears nowhere in the statute, or the cases interpreting it." (ECF No. 15 at 15). Indeed, plaintiff contends that the Priority Statute "does not say or even suggest that it applies only in 'insolvency proceedings.'" (Id.)  The cases upon which defendant relies do not appear to require an "insolvency proceeding," but rather merely require that the debtor is insolvent.  See e.g., Bramwell, 269 U.S. 483, 486 (debtor was insolvent within meaning of the Priority Statute even where no proceeding occurred and title was not transferred, and therefore, the Priority Statute applied).  Although the express language of the Priority Statute clearly requires that a person indebted to the government be "insolvent" for the statute to apply, nothing in the text of the statute requires that there be an insolvency proceeding, as defendant suggests.  See 31 U.S.C. § 3713(a)(1)

9

("A Claim of the United States Government shall be paid first when—(A) A person indebted to the Government is insolvent"). The Complaint clearly alleges that "[a]t the time that [defendant] transferred the assets of Lechim to third parties, Lehcim was or became insolvent. Its assets were insufficient to pay its expenses." (ECF No. 1 at ¶ 13). Thus, plaintiff has adequately alleged defendant's insolvency for purposes of stating a cause of action pursuant to the Priority Statute.

In addition to alleging that a debtor is insolvent, a cause of action pursuant to the Priority Statute must also allege that a debtor paid a non-federal debt by: (i) a voluntary assignment of property, (ii) an attachment of the debtor's property, or (iii) an act of bankruptcy. 31 U.S.C. § 3713(a)(1)(A). Here, the provision at issue is a "voluntary assignment of property," which defendant argues plaintiff has not adequately alleged within the meaning of the Priority Statute. (ECF No. 14-1 at 10). Specifically, defendant argues that a "voluntary assignment" is a term of art applied where a debtor "does not claim bankruptcy but instead vests a receiver, trustee or assignee with the power to administer and distribute property to satisfy outstanding debts." (ECF No. 16 at 16). Defendant maintains, citing authority, that liability can only attach "once a corporate representative accepts the role of a receiver, (in form or substance), but fails to prioritize payment to the United States." (ECF No. 16 at 17-18 n.8 and cases cited therein).

Plaintiff counters that "when [defendant] knew that Lehcim was insolvent and had a claim owed to the United States, and he then transferred the assets of Lehcim to other creditors instead of paying the United States' claim," defendant's transfer of funds was a "voluntary assignment of property" within the meaning of the Priority Statute. (ECF No. 15 at 16). Plaintiff cites cases in which courts, presented with facts similar to this case, found that a voluntary assignment of property occurred and the Priority Statute applied. See Renda, 709 F.3d at 481 (voluntary assignment occurred when defendant, "acting as [debtor's] representative, caused [debtor] to make

the July 2003 and December 2005 transfers and that, at the time of those transfers, [debtor] was insolvent"); see also United States v. Coyne, 540 F. Supp. 175, 179-80 (D.D.C. 1981) (corporate officer "assigned" corporation's assets to himself to avoid payment of corporate debt to the United States); United States v. Bridle Path Enterps., Inc., No. 99-11051-GAO, 2001 WL 1688911, at *4 (D. Mass. Dec. 4, 2001) (voluntary assignment occurred when defendants "made several payments to themselves out of [debtor's] corporate accounts."). The Complaint here alleges that upon receipt of the Notice of Deficiency, defendant "in his capacity as President of Lehcim – transferred $2,627,280 of Lehcim's funds to repay purported loans from third parties," before paying the claim of the United States, which rendered Lehcim insolvent. (ECF No. 1 at ¶ 13). The Complaint further alleges that defendant transferred Lehcim's assets to resolve outstanding debts, while disregarding the claims of the United States. Accepting all allegations in plaintiff's Complaint as true, the court concludes that plaintiff has adequately stated a claim for relief pursuant to the Priority Statute. Accordingly, defendant's Motion to Dismiss (ECF No. 14) is denied.

## IV. CONCLUSION

For the reasons set forth above, defendant's Motion to Dismiss (ECF No. 14) is DENIED. A separate order will follow.

Date: July 10, 2023                                  /s/_____
                                                     Beth P. Gesner
                                                     Chief United States Magistrate Judge