## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-22-2977 |
| ISAAC M. NEUBERGER, | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

Plaintiff United States of America initiated this action on November 16, 2022, pursuant to the Federal Priority Statute, 31 U.S.C. § 3713, seeking a judgment finding that Defendant Isaac M. Neuberger is personally liable for the outstanding tax liability of Lehcim Holdings, Inc. (Lehcim). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 66, 70), corresponding interim motions to seal (ECF Nos. 67, 71, 73, 78), and additional motions to seal (ECF Nos. 81–82, 86) filed in response to the Court's August 12, 2024 Order and August 22, 2024 conference (ECF Nos. 80, 84). The motions are fully briefed, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the motions for summary judgment are denied and the motions to seal are denied, except that two interim motions to seal (ECF Nos. 67, 73) are granted in part and denied in part.

### I.   Background

#### A.   Undisputed and Disputed Material Facts

Mr. Neuberger is a principal of the Baltimore law firm Neuberger, Quinn, Gielen, Rubin, & Gibber, P.A. (NQGRG). ECF Nos. 41 ¶ 7; 45 ¶ 7; 66-2 at 8.[1] He is also the only director of Lehcim, as well as its president, treasurer, and attorney. ECF Nos. 41 ¶¶ 6, 8; 45 ¶¶ 6, 8; 66-2 at

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

4, 17–18; 66-3 at 1; 66-4 at 10–11; 66-6 ¶¶ 2–3.  Mr. Neuberger and other NQGRG attorneys

incorporated Lehcim in 2001 to serve as "an investor on behalf of the Konig family."  ECF No.

66-2 at 16; *see also* ECF No. 66-4 at 8–9.  Lehcim's sole shareholder was Beauville Holdings Ltd.

(Beauville), a British Virgin Islands corporation, although the Konig family is Lehcim's beneficial

owner.  ECF Nos. 66-6 ¶ 5; 70-4 ¶ 4.  On December 17, 2002, Mr. Neuberger signed a document

entitled "Lehcim Holding, Inc. Consent of Sole Director," which authorized Lehcim to borrow

funds from Beauville "from time to time, up to a maximum of $2,000,000 in the aggregate

outstanding at any time, on such terms as shall be approved by the President of the Corporation."

ECF No. 66-6 ¶ 6.  This document contains similar language with respect to loans from

Nightingale Ventures Ltd. (Nightingale), another British Virgin Islands corporation, authorizing

loans "up to a maximum of $5,000,000 in the aggregate at any time."  *Id.* at ¶ 7.  Mr. Neuberger

was director of both Beauville and Nightingale.  ECF No. 66-7 ¶¶ 30–31.

      Lehcim was initially formed "to invest in a project in Philadelphia called . . . the One Penn

Center."  ECF No. 66-4 at 8–9; *see also* ECF No. 66-6 ¶ 8.  To secure funding for this investment,

on December 18, 2002, Lehcim borrowed $207,500 from Beauville.  ECF No. 66-10.  On that

same date, Lehcim borrowed $850,000 from Nightingale.  ECF No. 66-11.  The promissory notes

for these loans do not have a repayment schedule and only the Nightingale note has a maturity

date.  ECF Nos. 66-10, 66-11.  Lehcim deducted interest accrued on both loans on its federal

income tax returns.  ECF No. 70-4 ¶ 7.

      On March 14, 2019, the Internal Revenue Service (IRS) issued an IRS Letter 950 and

examination report to Lehcim showing proposed changes to Lehcim's federal tax returns for the

2010 through 2015 tax years.  ECF Nos. 41 ¶ 9; 45 ¶ 9; 66-24.  These materials explained that the

IRS did not consider the Beauville and Nightingale loans bona fide and therefore the IRS would

disallow interest expenses from these loans that Lehcim had claimed as a deduction on its returns

during the tax years in question.  ECF Nos. 66-24 at 51; 70-8 at 52.  The IRS mailed these

materials to the outside counsel Lehcim retained in connection with the IRS audit and to Lehcim

directly at NQGRG's offices.  ECF Nos. 41 ¶ 12; 45 ¶ 12; 66-24 at 1–2; 70-8 at 2–3.  The letter

requested that Lehcim respond by April 15, 2019, and indicate whether it agreed or disagreed with

the proposed changes in the examination report.  ECF Nos. 41 ¶ 10; 45 ¶ 10.  Lehcim did not agree

to the proposed changes.  ECF Nos. 41 ¶ 13; 45 ¶ 13; 70-4 ¶ 9.

On November 20, 2019, the IRS mailed a Notice of Deficiency for the 2010 to 2015 tax

years to Lehcim's outside counsel and to Lehcim directly at NQGRG's offices.  ECF Nos. 66-29,

70-10.  This notice explained Lehcim could challenge the notice by filing a petition with the

United States Tax Court, which Lehcim did not do.  ECF Nos. 41 ¶¶ 14–15, 18–19; 45 ¶¶ 14–15,

18–19; 66-29 at 4–6; 70-10 at 5–7.  The IRS calculated Lehcim's tax liability, inclusive of

penalties and interest, as $1,448,580.62 as of December 4, 2020.  ECF No. 66-32.

The parties dispute what occurred after the IRS's March 14, 2019 letter.  The United States

alleges that from "March 14, 2019[,] until March 5, 2020, [Mr.] Neuberger – in his capacity as

President of Lehcim – transferred over $8,000,000 of Lehcim's funds to repay purported loans

from third parties." ECF No. 41 ¶ 21.  The United States also contends that at the time of those

transfers, "Lehcim was or became insolvent," *i.e.*, its "assets were insufficient to pay its

expenses."  *Id*. at ¶¶ 21–22; *see also* ECF No. 60-1 at 16–20.  Mr. Neuberger denies these

allegations.  ECF No. 45 ¶¶ 21–22; *see also* ECF No. 70-1 at 14–17.  Mr. Neuberger contends that

Mr. Konig "approved a loan repayment plan to resolve all outstanding loans payable on the books

of Lehcim."  ECF No. 70-4 ¶ 9.  Mr. Neuberger asserts that neither he nor Lehcim "had any intent

to hinder, delay, or defraud the IRS," but "hoped that repayment of these loans would show the

IRS that they were wrong in their belief that the loans were not bona[ ]fide." *Id.* at ¶¶ 9, 12.

NQGRG testified at its deposition that it was Mr. Neuberger's idea to repay the loans.  ECF No.

66-5 at 18.  The decision to do so "had to do with the fact that the IRS . . . kept on alleging that these loans were bogus because they were never repaid . . . so okay, we'll repay them."  *Id*.  Mr. Neuberger also contests the conclusion of the United States' expert, who opined that Lehcim was insolvent during the relevant timeframe.  *Compare* ECF No. 66-1 at 17–20 *with* ECF No. 70-1 at 16–17; *see also* ECF No. 66-19.

### B.    Procedural History

On January 25, 2023, Mr. Neuberger moved to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 14.  In support of this motion, Mr. Neuberger advanced three arguments, each of which was rejected by the Court.  First, he argued that under *United States* v. *Estate of Romani*, 523 U.S. 517 (1998), the Federal Tax Lien Act of 1966, 26 U.S.C. § 6321 *et seq*., not the Federal Priority Statute, governs the United States' claim against him.  ECF No. 14-1 at 4–7.  Mr. Neuberger contended that *Estate of Romani* requires that the United States obtain a lien against a delinquent taxpayer and then apply the priority rules set forth in 26 U.S.C. § 6323.  *Id.* at 6.  Second, Mr. Neuberger argued that there could be no liability because Lehcim was no longer in possession of any property to which a tax lien could have attached at the time the United States could have obtained a lien.  *Id*. at 7–9.  Third, Mr. Neuberger argued that the Federal Priority Statute requires that a debtor's property be transferred to a fiduciary during the pendency of an insolvency proceeding, which the United States failed to allege in its Complaint.  *Id.* at 9–11.

The Honorable Beth P. Gesner, the presiding judge at the time this motion was decided, was unpersuaded by Mr. Neuberger's arguments as to the sufficiency of the allegations in the

---

[2]  Following the decision denying Mr. Neuberger's motion, the United States, with leave of the Court, filed an Amended Complaint.  ECF Nos. 37, 40–41.  The allegations in the Amended Complaint and the United States' theory of liability did not materially change.  *See* ECF Nos. 40-1; 70-1 at 13.

Complaint.[3]  *United States* v. *Neuberger*, Civil Action No. BPG-22-2977, 2023 WL 4456795 (D. Md. July 10, 2023); *see also* ECF No. 17.  In denying Mr. Neuberger's motion, Judge Gesner found that Mr. Neuberger's characterization of the *Estate of Romani* decision was "far too broad," and that subsequent lower court decisions have clarified that the case "requires the Government 'to follow the correct procedures for securing/maintaining its statutorily[ ]authorized tax lien . . . in order to gain a priority over other <u>secured</u> creditors.'"  *Neuberger*, 2023 WL 4456795, at *2 (emphasis in original) (quoting *United States* v. *Russell*, Civil Action No. 00-75597, 2002 WL 31174181, at *2 (E.D. Mich. Aug. 22, 2002)).  Because the Complaint alleged that Mr. Neuberger transferred Lehcim's funds to pay "third parties," a category of creditors not identified in the Tax Lien Act, Judge Gesner ruled that the United States had adequately alleged facts to support application of the Federal Priority Statute.  *Neuberger*, 2023 WL 4456795, at *3.  Judge Gesner likewise rejected Mr. Neuberger's argument that a tax lien was required for application of the Federal Priority Statute.  *Id*.  She concluded that allegations that the IRS had issued a Notice of Deficiency that informed Mr. Neuberger of the United States' claim for unpaid tax liabilities before any of the alleged transfers were sufficient to allege the existence of a claim within the meaning of the statute.  *Id*.  Finally, Judge Gesner held that the Federal Priority Statute requires only that "a person indebted to the government be 'insolvent' for the statute to apply" and that "nothing in the text of the statute requires that there be an insolvency proceeding."  *Id.* at *4-5.

## II.    Discussion

Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 66, 70), corresponding interim motions to seal (ECF Nos. 67, 71, 73, 78), and additional motions to seal (ECF Nos. 81–82, 86).  The various motions to seal and the motions for summary judgment are addressed in turn below.

---

[3]  This case was reassigned to the undersigned on December 11, 2023.

### A.    Motions to Seal

The Court entered a Confidentiality Order in this action, which governs confidential information exchanged in discovery.  ECF No. 58.  Among other things, it directs the parties to file any materials subject to the Confidentiality Order with an interim sealing motion.  *Id.* at ¶ 2. Consistent with the relevant terms of the Confidentiality Order, the parties' summary judgment motions are accompanied by interim sealing motions.  ECF Nos. 67, 71, 73, 78.  Regardless of the merits of the confidentiality designations in the course of discovery, the Court must consider the propriety of sealing summary judgment filings separately because of the public's right of access to court filings.  As the Court of Appeals for the Fourth Circuit has observed, "discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court."  *Rushford* v. *New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (holding that documents filed in support of summary judgment would be unsealed despite having been produced pursuant to a protective order in discovery).  Accordingly, "the district court must address the question [of sealing] at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order."  *Id.* at 253.

The public's right of access to the courts and court records is paramount.  "Transparency is not only important for its own sake.  It is integrally linked to the need of courts to maintain public trust."  *Doe* v. *Sidar*, 93 F.4th 241, 250 (4th Cir. 2024) (Wilkinson, J., concurring); *see also Doe* v. *Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (observing that "public access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary").  This important right "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny."  *Public Citizen*, 749 F.3d at 265.  Key to the Court's analysis is the source of the right of public access, for "the strength of the right of access varies depending on whether the public's right of access to the

document or proceeding derives from the common law or the First Amendment." *United States* v. *Doe*, 962 F.3d 139, 145 (4th Cir. 2020).  Under the common law, the "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253.  "Under the First Amendment, on the other hand, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id.*  Thus, the "public's right to access documents under the First Amendment is narrower in scope but stronger in force." *United States* v. *Doe*, 962 F.3d at 145.

The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Public Citizen*, 749 F.3d at 267; *see also Springs* v. *Ally Fin. Inc.*, 684 Fed. Appx. 336, 338 (4th Cir. 2017).  This is because "summary judgment adjudicates substantive rights and serves as a substitute for a trial." *Rushford*, 846 F.2d at 252.  Accordingly, "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Id.* (quoting *Joy* v. *North*, 692 F.2d 880, 893 (2d Cir. 1982)).  "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Virginia Dep't of State Police* v. *Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal citation omitted).  Importantly, "the First Amendment right of access to summary judgment materials does not depend on . . . judicial reliance on the documents in resolving the motion," but rather "once the documents are '*filed* in connection with a summary judgment motion in a civil case,' the 'more rigorous First Amendment standard' must be satisfied before the public can be denied access." *United States ex rel. Oberg* v. *Nelnet, Inc*., 105 F.4th 161, 172 (4th Cir. 2024) (quoting *Rushford*, 846 F.2d at 252-253) (emphasis in original).

Limiting public access to summary judgment filings requires the Court to make specific findings that sealing is essential to preserve higher values, sealing is narrowly tailored to serve that

interest, and less restrictive alternatives to sealing are inadequate.  *In re Washington Post Co.*, 807

F.2d 383, 390 (4th Cir. 1986); *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984); *see also*

Local Rule 105.11.  Prior to sealing, the Court must also provide notice to the public and an

opportunity to object, which can be accomplished by docketing the motion to seal in advance of

deciding the issue.  *In re Knight Pub. Co.*, 743 F.2d at 235.  Here, because the first interim motion

to seal was filed more than two months ago, there has been ample time to lodge an objection.

*E.g.*, *VCA Cenvet, Inc.* v. *Chadwell Animal Hosp., LLC*, Civil Action No. JKB-11-1763, 2013 WL

1818681, at *2 (D. Md. Apr. 29, 2013) (finding that "more than two months" satisfied the public

notice procedural requirement); *see also* Local Rule 105.11 (providing that the "Court will not rule

upon the motion until at least fourteen (14) days after it is entered on the public docket to permit

the filing of objections by interested parties").

      The United States does not assert any basis for sealing its motion and related exhibits.  In

fact, it affirmatively states that its filings should not be sealed.  ECF Nos. 67, 73.  In his interim

motions to seal, Mr. Neuberger references only the Confidentiality Order that governed discovery

and a desire to "maintain the confidentiality of this material."  ECF Nos. 71 at 1; 78 at 1.  On

August 12, 2024, the Court notified the parties that it was "not persuaded that the summary

judgment motions and related exhibits should be sealed in their entirety" and directed the parties

to "identify any filing or portion thereof that they wish to (1) withdraw or (2) redact, either

because it contains personally identifiable information or implicates a significant countervailing

interest that heavily outweighs the presumption of public access to the summary judgment

filings."  ECF No. 80.  In his responsive filing, Mr. Neuberger takes the position that portions of

the summary judgment memoranda should be redacted and that 59 of the 93 exhibits should

remain under seal.  ECF No. 82 at 1–2.  In support of this position, Mr. Neuberger relies on the

statutory designation of confidentiality and cites cases in which courts in this Circuit have held

that tax returns should be sealed because of the confidential nature of the information they contain. *Id.* at 2–3 (citing 26 U.S.C. § 6103(a) and collecting cases).  Mr. Neuberger asserts that "there is a strong countervailing interest in maintaining the confidentiality of information of third-party taxpayers" that outweighs the public right of access to the summary judgment filings.  *Id.* at 4. The United States, on the other hand, maintains that all the documents filed in connection with the pending summary judgment motions should be unsealed and can be used publicly because they are not subject to the protections under 26 U.S.C. § 6103 or are specifically excepted from protection under 26 U.S.C. § 6103(h)(4)(A).  ECF No. 83 at 1.

Section 6103(a) provides that "[r]eturns and return information shall be confidential, and except as authorized by this title."  26 U.S.C. § 6103(a).  However, "Congress has created an explicit exception for the disclosure of tax information in association with judicial and administrative tax proceedings."  *Bowers* v. *J&M Disc. Towing, L.L.C.*, Civil Action No. 06-299 JB/RHS, 2007 WL 967161, at *5 (D.N.M. Feb. 28, 2007).  Subsection (h)(4) further provides, in pertinent part, that a "return or return information may be disclosed in a Federal . . . judicial . . . proceeding pertaining to tax administration, but only . . . if . . . the proceeding arose out of, or in connection with, determining the taxpayer's civil . . . liability, or the collection of such civil liability, in respect of any tax imposed under this title."  26 U.S.C. § 6103(h)(4)(A); *see also Whistleblower 972-17W* v. *Commissioner of Internal Revenue*, Civil Action No. 972-17W, 2022 WL 2718766, at *6-11 (T.C. July 13, 2022) (discussing Section 6103(h)(4)).  The Fourth Circuit has explained that "§ 6103(h)(4) exceptions operate only as a gatekeeper device that allows the disclosure of taxpayer information in certain situations."  *Nagy* v. *United States*, 519 Fed. Appx. 137, 143 (4th Cir. 2013).  Thus, if "a § 6103(h)(4) exception applies, that determination removes only the statutory disclosure barrier."  *Id.*  The court must then engage in the ordinary analysis to determine if sealing is warranted.  *Silver* v. *Internal Revenue Serv.*, Civil Action No. 19-CV-247

(APM), 2021 WL 1177998, at *2 (D.D.C. Mar. 28, 2021) (noting that Section 6103 permits but does not require disclosure).

It is not difficult to conclude that this case falls within Section 6103(h)(4)(A)'s exception. Indeed, Mr. Neuberger conceded as much during an August 22, 2024 conference to discuss the motions to seal.  ECF No. 84.  The United States has filed suit to collect Lehcim's tax debt from Mr. Neuberger.  This action therefore constitutes a federal judicial proceeding pertaining to tax administration.  *See*, *e.g.*, *Gardner* v. *United States*, 213 F.3d 735, 738 (D.C. Cir. 2000) (noting that federal law defines "tax administration" broadly); *United States* v. *Mangan*, 575 F.2d 32, 40 (2d Cir. 1978) (observing that "the definition of 'tax administration' in § 6103(b)(4) is so sweeping as to compel rejection of a restrictive interpretation").  Mr. Neuberger notes that the tax returns and return information at issue here relate to Lehcim, which is not a party to this action. ECF No. 82 at 3.  But the statutory exception is not limited to proceedings in which the taxpayer is a party, it also applies to proceedings "in connection with," *i.e.* related to, the collection of civil tax liability.  *Whistleblower 972-17W*, 2022 WL 2718766, at *8.  Thus, the statutory confidentiality of tax returns cannot carry Mr. Neuberger's burden on the interim motions to seal nor can generalized allegations about the sensitivities associated with tax returns and return information.  *See*, *e.g.*, *Schmidt* v. *Internal Revenue Serv.*, 533 F. Supp. 3d 952, 955 (E.D. Cal. 2020) (denying motion to seal tax information that was based on generalized and speculative allegations of harm); *Baldwin* v. *United States*, 732 F. Supp. 2d 1142, 1146 (D. N. Mar. I. 2010) (same).

In his filings, Mr. Neuberger has not put forward any particularized reason for redacting portions of the supporting memoranda of law and sealing nearly two-thirds of the summary judgment exhibits.  Mr. Neuberger contends that "courts frequently seal information that is not of particular relevance to the issue at hand," but that fails both as a matter of law and fact.  ECF No.

82 at 2.  The Fourth Circuit has instructed that judicial reliance on a document in resolving an issue is not decisive.  *Oberg*, 105 F.4th at 172.  Instead, the mere filing of a document in connection with a summary judgment motion triggers the heightened First Amendment right of access.  *Id.*  Moreover, it cannot be said that Lehcim's tax liability is adjacent to the core issues presented in this case.  Lehcim's tax liabilities, and Mr. Neuberger's knowledge of them, lie at the heart of this case.  As discussed *infra*, pp. 15-16, for the United States to establish the priority of its claim and Mr. Neuberger's personal liability for such a claim, it must prove, among other things, that Lehcim owed a debt (here, a tax liability) and that Mr. Neuberger had notice of the debt.

"[W]hen ruling on a motion to seal, courts consider how relevant or central the disputed documents are to the claims at issue."  *Kantsevoy* v. *LumenR, LLC*, Civil Action No. ELH-17-359, 2017 WL 11456498, at *4 (D. Md. Nov. 27, 2017) (Gesner, J.); *see also Hetzel* v. *ANC Healthcare, Inc.*, Civil Action No. 1:23-CV-00152-MR-WCM, 2024 WL 3708872, at *2 (W.D.N.C. Aug. 7, 2024) (collecting cases).  This holds true even when a judicial opinion does not directly rely on the documents, so long as "they are relevant to the issues decided in the motions for summary judgment."  *Hammons* v. *University of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 129 (D. Md. 2023).  Where a document is "central to the adjudicative process," the public's right of access should be accorded strong weight.  *Hetzel*, 2024 WL 3708872, at *2.  This is because the "underpinning of the public's right to access judicial records is the public's right to 'judge the product of the courts in a given case.'"  *Smith* v. *Westminster Mgmt., LLC*, Civil Action No. JKB-17-3282, 2018 WL 572867, at *3 (D. Md. Jan. 26, 2018) (quoting *Columbus-America Discovery Grp.* v. *Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000)).

The cases on which Mr. Neuberger relies do not compel a different result, as they do not involve the statutory exception to the confidentiality of tax returns applicable here and do not

support the breadth of his proffered redactions and sealing. *E.g.*, *Bon Vivant Catering, Inc.* v. *Duke Univ.*, Civil Action No. 1:13CV728, 2016 WL 7638284, at *2 (M.D.N.C. June 14, 2016) (sealing federal tax returns but not the parties' briefing); *TransPacific Tire & Wheel, Inc.* v. *Orteck Int'l, Inc.*, Civil Action No.  DKC 2006-187, 2010 WL 2774445, at *3 (D. Md. July 13, 2010) (same).  Moreover, the relevance of the tax returns in the cited cases appears to be marginal, which alters the analysis when weighing the competing interests. *E.g.*, *Bon Vivant Catering, Inc.*, 2016 WL 7638284, at *2 ("To the extent the information contained in the tax records is relevant for summary judgment purposes, such information is available to the public as part of the parties' briefing"); *Reed* v. *Innovative Mgmt. Strategists, Inc.*, Civil Action No. DKC-16-2442, 2017 U.S. Dist. LEXIS 6786 (D. Md. Jan. 18, 2017) ("Given that the tax return information had no bearing on the court's decision, the public's interest in the information is outweighed by IMS's interest in protecting its confidential financial information.").

In sum, Mr. Neuberger has not carried his burden.  Given the volume and nature of the exhibits, on August 22, 2024, the undersigned held a conference with counsel to determine whether any personally identifiable information or other discrete portions of the filings should be redacted.  ECF No. 84.  As a result of that conference, the United States was directed to review its exhibits that contain tax returns and IRS Form 872 (Consent to Extend the Time to Assess Tax) (Exhibits 12–15, 42–48, and 51–58) to determine if there are any extraneous or duplicative documents should be removed and, if necessary, to file amended exhibits.  The United States has done so.  ECF No. 85.  Following its review, the United States has filed amended exhibits that omit (1) Maryland tax return information from Exhibits 12 to 15 and 42 to 48 and (2) extraneous documents from Exhibits 52 to 53. *Id.* at 1–2; *see also* ECF Nos. 85-1–85-13.  These amended exhibits will replace the corresponding original exhibits to the United States' summary judgment

filings, which will remain under seal.  In light of the foregoing, the motions to seal are denied,

except that two interim motions to seal (ECF Nos. 67, 73) are granted in part and denied in part.[4]

**B.      Summary Judgment Standard of Review**

Summary judgment motion practice "is properly regarded . . . as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.

R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms,

this standard provides that the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242,

247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of

the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial."  *First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253,

288-289 (1968).  On the other hand, summary judgment "is justified if, from the totality of the

evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the

court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to

judgment as a matter of law."  *Sylvia Dev. Corp.* v. *Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir.

---

[4]  The original exhibits that will remain under seal are set forth in the Order that
accompanies this Memorandum Opinion.

1995) (citing Fed. R. Civ. P. 56(c)).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol* v. *Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

The Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998)).  At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant[ ] and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001).  Accordingly, "[i]n the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes." *Middleton* v. *Koushall*, Civil Action No. ELH-20-3536, 2024 WL 1967816, at *9 (D. Md. May 3, 2024).

## C.    The United States' Motion for Summary Judgment

The United States' sole cause of action arises under the Federal Priority Statute, 31 U.S.C. § 3173.  "The manifest purpose of the statute, in force since 1797 without significant modifications, is simply to protect the interest of the Government in collecting money due to it where the property of an insolvent debtor is involved."[5]  *W. T. Jones & Co.* v. *Foodco Realty, Inc.*,

---

[5] Given that the statutory language has been largely unchanged since its original enactment, "the early pronouncements of the Supreme Court" interpreting the Federal Priority

318 F.2d 881, 885 (4th Cir. 1963) (internal quotation marks and citation omitted).  This statute "is almost as old as the Constitution, and its roots reach back even further into the English common law; the Crown exercised a sovereign prerogative to require that debts owed it be paid before the debts owed other creditors."  *United States* v. *Moore*, 423 U.S. 77, 80 (1975) (internal citation omitted).  The public policy underlying the Federal Priority Statute is to secure adequate revenue. *Id.* at 81.  The United States Supreme Court has therefore consistently instructed that the statute should be construed liberally to achieve this purpose.  *Id.* at 81-82; *Beaston* v. *Farmers' Bank of Del.*, 37 U.S. 102, 134 (1838).

The present version of the statute provides, in pertinent part, that "[a] claim of the United States Government shall be paid first when . . . a person indebted to the Government is insolvent and . . . the debtor without enough property to pay all debts makes a voluntary assignment of property . . . [or] . . . an act of bankruptcy is committed."[6]  31 U.S.C. § 3713(a)(1)(A)(i), (iii). Thus, as relevant here, the priority of the United States' claim requires evidence of "three elements: (1) a debt due the United States; (2) the debtor's insolvency; and (3) the occurrence of a triggering event—an assignment of property for benefit of creditors . . . or act of bankruptcy." *United States* v. *Blumenfeld*, 128 B.R. 918, 928 (Bankr. E.D. Pa. 1991).  Upon such a showing, subsection (b) provides that a "representative . . . paying any part of a debt of the person . . . before paying a claim of the Government is liable to the extent of the payment for unpaid claims

---

Statute "are still authoritative."  Richard H.W. Maloy, *The "Priority Statute" -- The United States' "Ace-in-the-Hole"*, 39 J. Marshall L. Rev. 1205, 1272 (2006).

[6]  The term "person" in Section 3173(a)-(b) encompasses corporations.  *United States* v. *Renda*, 709 F.3d 472, 479 n.5 (5th Cir. 2013) (citing *Moore*, 423 U.S. at 78-86; *Beaston*, 37 U.S. at 134).

of the Government."[7]  31 U.S.C. § 3713(b); *see also United States* v. *Moriarty*, 8 F.3d 329, 333 (6th Cir. 1993) (holding that the United States' cause of action against a debtor's representative is "wholly independent" from its cause of action against the debtor and accrues "once the acts which trigger the representative's liability occur").  The purpose of imposing personal liability on a debtor's representative "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." *King* v. *United States*, 379 U.S. 329, 337 (1964).

Although the statutory language may suggest strict liability, courts have interpreted Section 3713(b) as requiring evidence that: (1) the representative transferred or distributed the debtor's assets before paying an antecedent claim of the United States; (2) when the debtor is insolvent; and (3) with knowledge or notice of the United States' claim.[8] *United States* v. *McNicol*, 829 F.3d 77, 81-82 (1st Cir. 2016); *accord United States* v. *Renda*, 709 F.3d 472, 480-481 (5th Cir. 2013); *United States* v. *Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996).  The third element means that the representative "must have knowledge of the debt owed . . . to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment." *Coppola*, 85 F.3d at 1020.

---

[7]  The term "representative" in Section 3173(b) includes corporate officers, among others. *Renda*, 709 F.3d at 480 n.7.

[8]  There is a distinction in how courts interpret the insolvency requirement for representative liability under Section 3713(b).  *Compare McNicol*, 829 F.3d at 81 (noting that "insolvency requirement demands that an indebted estate *be insolvent at the time that the personal representative effects a transfer of assets*") (emphasis added) *with Coppola*, 85 F.3d at 1020 (observing that "liability is imposed on a representative   . . . who pays a debt . . . in derogation of the priority of debts owed to the United States, *thereby rendering the estate insolvent*") (emphasis added).  At this juncture, it is unnecessary to resolve this question.

The United States contends that Mr. Neuberger is personally liable for Lehcim's tax debt under Section 3713(b) because of his alleged role in "paying $8 million from June 2019 through March 2020 to a purported unsecured creditor ahead of the United States' claim for taxes" after he had "ample notice of the United States' claim."  ECF No. 66-1 at 21–22.

### 1.   Debt Due to the United States

Under the statute, "the term 'claim' or 'debt' means any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency."  31 U.S.C. § 3701(b)(1).  Court have consistently held that this broad definition encompasses federal tax debt. *Coppola*, 85 F.3d at 1020 (citing *Massachusetts* v. *United States*, 333 U.S. 611, 625-626 (1948)) ("There is no question that taxes owed to the United States fall within the scope of a 'claim of the Government' under the statute's broad terms."); *see also United States* v. *Tyler*, 528 Fed. Appx. 193, 201 (3d Cir. 2013) (same); *Viles* v. *Comm'r,* 233 F.2d 376, 379 (6th Cir. 1956) ("Federal income taxes are 'debts' due the United States.").  Indeed, the Supreme Court first held as much nearly 100 years ago, as did Judge Gesner in this very case.  *Price* v. *United States*, 269 U.S. 492, 499 (1926); *Neuberger*, 2023 WL 4456795, at *3.  The parties do not dispute the fact that in 2019 the IRS issued a letter and examination report to Lehcim that identified federal tax liabilities for tax years 2010 through 2015, and that Lehcim did not agree with the IRS's assessment but nevertheless did not petition the United States Tax Court to contest the tax liabilities.  *See supra* pp. 2-3.  This element is therefore satisfied.

### 2.   Insolvency of Debtor

As Judge Gesner previously observed, to establish the insolvency of a debtor the United States must prove that the debtor's "liabilities exceeded its assets."  *Neuberger*, 2023 WL 4456795, at *4 (quoting *Bramwell* v. *United States*, 269 U.S. 483, 487 (1926)); *accord Renda*, 709

F.3d at 479 n.6; *Lakeshore Apts., Inc.* v. *United States*, 351 F.2d 349, 353 (9th Cir. 1965).

Insolvency is a factual question. *In re Heilig-Meyers Co.*, 328 B.R. 471, 475 (Bankr. E.D. Va.

2005). Therefore, it does not lend itself to resolution on summary judgment and is most often a

matter for the factfinder to decide. *In re Worldcom, Inc.*, 357 B.R. 223, 230 (Bankr. S.D.N.Y.

2006); *In re Transit Grp., Inc.*, 332 B.R. 45, 55 (Bankr. M.D. Fla. 2005). The United States

acknowledges this but nevertheless argues that this is one of the few cases where the question of

insolvency is "so clear-cut" that it can be decided at this stage of the case. ECF No. 66-1 at 24

(quoting *Vivos Acquisitions, LLC* v. *Health Care Res. Network, LLC*, Civil Action No. 1:19-cv-

1606 (RDA/TCB), 2022 WL 995389, at *4 (E.D. Va. Mar. 31, 2022)). The United States

contends that the material facts regarding Lehcim's insolvency are undisputed because its expert

report is unrebutted. *Id.* The United States has oversimplified the issue.

The mere fact that Mr. Neuberger did not produce an expert report on the issue of

insolvency does not necessarily render the issue uncontested. Parties typically rely on an expert to

address the issue of solvency. *E.g.*, *United States* v. *Sandwich Isles Commc'ns, Inc.*, 689 F. Supp.

3d 873, 888 (D. Haw. 2023); *see also SE Prop. Holdings, LLC* v. *Center*, Civil Action No. 15-

0033-WS-C, 2017 WL 242610, at *3 n.5 (S.D. Ala. Jan. 19, 2017) (collecting cases). Indeed,

courts in this Circuit have found that, at least in the context of bankruptcy proceedings, expert

evidence is preferred. *E.g.*, *In re Strickland*, 230 B.R. 276, 282 (Bankr. E.D. Va. 1999) (observing

that "whenever it is possible, a determination of insolvency should be based on seasonable

appraisals or expert testimony") (citing *In re Roblin Indus., Inc.*, 78 F.3d 30, 38 (2d Cir. 1996)).

But insolvency determinations do not require expert testimony. *In re Kane & Kane*, 479 B.R. 617,

630 (Bankr. S.D. Fla. 2012); *see also Porter* v. *Yukon Nat'l Bank*, 866 F.2d 355, 357 (10th Cir.

1989) (rejecting defendant's argument that the trustee failed to carry his burden simply because he

did not introduce expert testimony of the kind relied upon by defendant). This is because

"[f]inding whether the Debtor was insolvent . . . does not present technical questions beyond the competence of lay determination."  *In re Kane & Kane*, 479 B.R. at 630.

The United States contends that Mr. Neuberger has not put forth evidence to rebut its evidence of solvency.  In doing so, it misapprehends the thrust of Mr. Neuberger's argument.  As plaintiff, the United States bears the burden of proving the elements of its claim, including Lehcim's insolvency at the time of or because of the alleged triggering events.[9]  The United States has elected to prove the element of insolvency with the assistance of an expert.  The Court is not bound to admit proffered expert testimony nor is the factfinder bound to accept such evidence whole cloth.  *E.g.*, *Berlyn, Inc.* v. *Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 536 (D. Md. 2002) ("Even if a witness is qualified to offer an expert opinion, that opinion can be excluded if it is based on inadequate facts or flawed methodology.").  Indeed, it is not uncommon for courts sitting as factfinders to question the sufficiency of valuation and solvency evidence.  *E.g.*, *Sandwich Isles Commc'ns, Inc.*, 689 F. Supp. 3d at 888-889 (rejecting the United States' expert report and testimony because of concerns regarding methodology and analysis); *see also Matter of Lamar Haddox Contractor, Inc.*, 40 F.3d 118, 122 (5th Cir. 1994) (finding proffered expert testimony insufficient to establish the debtor's insolvency because substantial questions remained as to the fair value of the debtor's property); *In re Heilig-Meyers Co.*, 319 B.R. 447, 458-463 (Bankr. E.D. Va. 2004), *aff'd*, 328 B.R. 471 (Bankr. E.D. Va. 2005) (discussing competing expert reports and concluding that neither presented the correct valuation of assets).  Mr. Neuberger has raised several challenges to the assumptions, methodology, and conclusions of the United States' expert, which—if successful—could call into question both the admissibility and weight of the expert's opinion.  ECF No. 70-1 at 46–52.  If these arguments prevail, then the factfinder may conclude that the United States has not carried its burden as to this element.  At this juncture, the

---

[9]  *See supra* p. 16 n.8.

disputed issues of material fact concerning Lehcim's solvency preclude summary judgment for the United States.

        3.    <u>Triggering Event</u>

Ordinarily, the Court's ruling on insolvency would render discussion of the remaining elements of the United States' claim unnecessary.  However, Mr. Neuberger raises challenges in his cross-motion for summary judgment that bear on the third element of Section 3713(a).  Those arguments are addressed below.  Mr. Neuberger's other arguments in support of his cross-motion are discussed in the following section.  *See infra* pp. 23-27.

As noted, *supra* p. 15, the Federal Priority Statues requires that a statutorily defined triggering event occur for the United States' claim to have priority.  As applicable in this case, Lehcim must have either (1) made a voluntary assignment of property or (2) committed an act of bankruptcy.  31 U.S.C. § 3713(a)(1)(A)(i), (iii).  Mr. Neuberger agrees that the United States must establish one of these prerequisites, but contends that, as a matter of law, it cannot do so.  ECF No. 70-1 at 18–27.

This Court previously rejected Mr. Neuberger's first argument.  In his motion to dismiss and cross-motion for summary judgment, Mr. Neuberger submits that "a voluntary assignment of property" within the meaning of Section 3713(a) is limited to "a transfer without compulsion of law by a debtor of [ ] property to an assignee in trust to apply the same or the proceeds thereof to the payment of [ ] debts."  *Id.* at 20 (quoting *United States* v. *Fabricated Air Prod. Co.*, 206 F. Supp. 228, 231 (E.D. Tex. 1962)); *see also* ECF No. 16 at 16–18.  Judge Gesner did not credit this argument and instead held that the allegations in the Complaint—that after receipt of the IRS's Notice of Deficiency and in his capacity as President of Lehcim, Mr. Neuberger transferred over $2.6 million of Lehcim's funds to resolve outstanding debts while disregarding the United States' claim—stated a claim for relief under Section 3713.  *Neuberger*, 2023 WL 4456795, at *10-11.

The undersigned declines to revisit this ruling.  It remains to be seen whether the United States can prove its claim, but it does not fail as a matter of law on this basis.

Mr. Neuberger's second argument—that the concept of "an act of bankruptcy" is obsolete—is similarly unavailing.  Mr. Neuberger contends that because the Bankruptcy Reform Act in 1978, Pub. L. No. 95-598, 92 Stat. 2549 (11 U.S.C. § 101 *et seq*.), repealed earlier law on which the Supreme Court relied in defining the phrase "act of bankruptcy" in the context of the Federal Priority Statute, the reference to an act of bankruptcy in Section 3713 has been nullified.  ECF No. 70-1 at 25–26.  The cases Mr. Neuberger cites stand for the general proposition of the effect of repeal of a statute, but they do not bear on the viability of Section 3713(a)(1)(A)(iii) specifically.  ECF No. 70-1 at 26–27 (citing cases).  Moreover, Mr. Neuberger's proffered expert's opinions (ECF No. 70-2) bear on questions of law, which lie outside the province of an expert witness, regardless of the witness's background or qualifications.  *E.g.*, *Sun Yung Lee* v. *Zom Clarendon, L.P.*, 453 Fed. Appx. 270, 278 (4th Cir. 2011) (affirming exclusion of an expert report because "pure questions of law [ ] are well within the parameters reserved for the district court on a motion for summary judgment and are inappropriate subjects for expert testimony").

As the United States notes, Congress enacted the current version of the Federal Priority Statute, Pub. L. No. 97-258, 96 Stat. 877 (31 U.S.C. § 3713), in 1982, only a few years after passage of the Bankruptcy Reform Act of 1978.  It is telling that Congress retained the "act of bankruptcy" language in this version of the statute.  Principles of statutory interpretation and the separation of powers require this Court to honor the statute's plain text.  This is also consistent with decisions that recognize the continuing vitality of an act of bankruptcy as a triggering event that may support the priority of the United States' claim.  *United States* v. *Golden Acres, Inc.*, 684 F. Supp. 96, 101 (D. Del. 1988) ("The term 'act of bankruptcy' still refers to the statutory definition contained in the Bankruptcy Act of 1898, former 11 U.S.C. § 21(a) (1976), even though

the Bankruptcy Reform Act of 1978 generally supersedes the 1898 Act."); *see also Jonathan's Landing, Inc.* v. *Townsend*, 960 F.2d 1538, 1543 n.20 (11th Cir. 1992); *United States* v. *Whitney*, 654 F.2d 607, 610 (9th Cir. 1981).[10]  This argument is therefore insufficient to defeat the United States' claim as a matter of law.

Mr. Neuberger's third argument that a preferential payment is not an act of bankruptcy also falters.  ECF No. 70-1 at 29–31.  Notably, he does not discuss the Bankruptcy Act of 1898, which, as the United States correctly notes, defined "acts of bankruptcy" as including "a preferential transfer."  11 U.S.C. § 21(a)(2) (1976) (repealed); *see also In re Marshall*, 721 F.3d 1032, 1061 (9th Cir. 2013) (observing that preferential transfer was an act of bankruptcy under the 1898 Act).  Mr. Neuberger's efforts to distinguish case law recognizing preferential transfers as acts of bankruptcy are unavailing and his reliance on an expert opinion, as noted, *supra* p. 21, is misplaced.  Case law makes clear that a preferential transfer satisfies this element of a Federal Priority Act claim.  *E.g.*, *Whitney*, 654 F.2d at 610; *Lakeshore Apartments, Inc.*, 351 F.2d at 353 (9th Cir. 1965).[11]

Finally, Mr. Neuberger argues that the United States is not entitled to summary judgment because he did not intend to hinder, delay, or defraud the IRS, and that the decision to repay the loans was made in an effort to show the IRS that the loans were bona fide.  ECF No. 70-1 at 31–32.  It is unclear whether Mr. Neuberger's intent has any relevance given that the elements of

---

[10]  *Accord Sandwich Isles Comm'ns, Inc.*, 689 F. Supp. 3d at 892; *United States Dep't of Just.* v. *Sperry*, Civil Action No. 1:12-CV-00320-JMS, 2013 WL 1768664, at *6 (S.D. Ind. Apr. 24, 2013); *Law Offs. of Jonathan Stein* v. *Cadle Co.*, 87 F. Supp. 2d 1015, 1018-1020 (C.D. Cal. 1999), *aff'd sub nom.*, 250 F.3d 716 (9th Cir. 2001); *United States* v. *Idaho Falls Assocs. Ltd. P'ship*, 81 F. Supp. 2d 1033, 1040 (D. Idaho 1999); *Blumenfeld*, 128 B.R. at 929; *Cardinal Const. Co.* v. *Besmec, Inc.*, 701 F. Supp. 1274, 1280 (S.D. W.Va. 1988); *Carter* v. *Carter*, 681 F. Supp. 323, 327 (E.D. Va. 1988).

[11]  *Accord Idaho Falls Assocs. Ltd. P'ship*, 81 F. Supp. 2d at 1040; *Golden Acres, Inc.*, 684 F. Supp. at 101; *In re Gottheiner*, 3 B.R. 404, 408 (Bankr. N.D. Cal. 1980), *aff'd*, 703 F.2d 1136 (9th Cir. 1983).

establishing a representative's personal liability require only knowledge or notice of the United States' claim.  *See supra* p. 16.  In any event, this argument involves disputed issues of material fact, which are not appropriate for resolution on summary judgment.

### D.    Mr. Neuberger's Motion for Summary Judgment

Mr. Neuberger advances multiple arguments in support of his cross-motion for summary judgment, several of which were addressed in his motion to dismiss.  As noted, *supra* pp. 4-5, Judge Gesner previously rejected Mr. Neuberger's contentions (ECF No. 70-1 at 32–41) that the Tax Lien Act governs the parties' dispute, and that an insolvency proceeding is a required condition precedent for application of the Federal Priority Statute.  *Neuberger*, 2023 WL 4456795, at *4-11.  The undersigned declines to revisit that ruling.  Mr. Neuberger's remaining arguments are addressed below.

### 1.    Pleading Fraud Allegations with Particularity

Mr. Neuberger submits that the United States cannot be permitted to rely on a fraudulent transfer theory of liability because it did not plead these claims with particularity as required by Federal Rule of Civil Procedure 9(b).  ECF No. 70-1 at 27–29.  In pertinent part, Rule 9(b) requires that when "alleging fraud, a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Claims that sound in fraud or have the substance of fraud fall under Rule 9(b).  *Cozzarelli* v. *Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

The United States correctly notes that Rule 9(b) challenges are subject to waiver when raised after a responsive pleading has been filed.  *E.g.*, *American Airlines, Inc.* v. *Shahi World & Travels, LLC,* Civil Action No. 1:20-CV-17 (RDA/WEF), 2023 WL 3952332, at *11 (E.D. Va. June 12, 2023) (adopting "the approach of other district courts in this circuit in finding that a Rule 9(b) motion is waivable if not brought by a defendant before (or alongside) a responsive pleading"); *Miller* v. *Strudwick*, Civil Action No. GLR-14-2303, 2018 WL 4679730, at *7 (D. Md.

Sept. 28, 2018) (ruling that defendants waived their Rule 9(b) arguments because they were raised nine months after filing an answer).  Given that Mr. Neuberger raises a Rule 9(b) argument well past the time of his responsive pleading, waiver may very well carry the day.

Even if waiver does resolve the question, it is entirely unclear whether the heightened pleading requirement applies to a Federal Priority Act claim.  The Fourth Circuit has instructed that when "evaluating whether a cause of action must be pled with particularity, a court should examine whether the claim requires an essential showing of fraud."  *Baltimore Cnty.* v. *Cigna Healthcare*, 238 Fed. Appx. 914, 921 (4th Cir. 2007).  Section 3713 does not, on its face, require a showing of fraud.  The first two prerequisites of subsection (a)—the United States' claim and the debtor's insolvency—certainly do not implicate fraud.  As to the third prerequisite, subsection (a) sets forth three categories of triggering events that must be established for the United States' claim to have priority: "(i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed."  31 U.S.C. § 3713(a)(1)(A)(i)-(iii).  None of these triggering events necessarily call for allegations of fraud.  Subsection (b) is likewise silent as to fraud.  31 U.S.C. § 3713(b).  As noted, *supra* pp. 16 and 23, courts interpreting the representative liability provision have read a knowledge or notice intent into the statute, but under the federal rules, knowledge may be plead generally.  Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

While the statutory language does not require fraud, courts have found that fraudulent conduct with respect to a debtor's assets may constitute an act of bankruptcy under Section 3713(a)(1)(A)(iii).  *E.g.*, *United States* v. *Bayley*, Civil Action No. 3:20-CV-05867-DGE, 2023 WL 3093126, at *8 (W.D. Wash. Apr. 26, 2023) (fraudulent conveyance); *Golden Acres, Inc.*, 684 F. Supp. at 102 (conveyance of property with the intent to hinder, delay, or defraud a creditor or

without fair consideration); *In re Gottheiner*, 3 B.R. 404, 408 (Bankr. N.D. Cal. 1980), *aff'd*, 703 F.2d 1136 (9th Cir. 1983) (fraudulent transfer of debtor's assets).  Indeed, Mr. Neuberger appears to base his Rule 9(b) challenge on the United States' arguments in support of its summary judgment motion, which he claims raise the allegation of fraudulent transfer for the first time. ECF No. 70-1 at 27; *see also* ECF No. 66-1 at 27.

The Circuit Courts of Appeals and lower courts have taken divergent approaches to the application of heightened pleading standards to claims involving fraudulent transfer and fraudulent conveyance.  *E.g.*, *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019) (collecting cases and discussing a circuit split regarding fraudulent transfer claims); *In re Air Cargo, Inc.*, 401 B.R. 178, 192, 192 n.7 (Bankr. D. Md. 2008) (collecting cases and discussing a division of authority regarding constructively fraudulent conveyance); *see also West Inv. Foreign Shares, LLC* v. *McCollum*, 638 F. Supp. 3d 595, 608 (W.D.N.C. 2022) (observing that "the Fourth Circuit has not decided whether fraudulent conveyances trigger Rule 9(b)'s heightened pleading standard").  It is unnecessary to resolve the question because assuming without deciding that Rule 9(b) applies to Section 3713 claims and that Mr. Neuberger did not waive this argument, the United States has met its pleading burden.

Rule 9(b) requires that "the who, what, when, where, and how of the alleged fraud" be pleaded with particularity.  *United States ex rel. Wilson* v. *Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted).  The purpose of this rule is to: (1) "ensure[ ] that the defendant has sufficient information to formulate a defense"; (2) "protect defendants from frivolous suits"; (3) "eliminate fraud actions in which all the facts are learned after discovery"; and (4) "protect[ ] defendants from harm to their goodwill and reputation."  *Harrison* v. *Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)

*aff'd sub nom.*, 352 F.3d 908 (4th Cir. 2003).  The United States' Amended Complaint fulfills the rule's requirements and purposes.

Importantly, the Fourth Circuit has cautioned that a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Id.*  The posture of this case, in which discovery has been completed and summary judgment motions are fully briefed, makes plain that these two criteria have been amply satisfied and dismissal is inappropriate.  *See, e.g.*, *Mikels* v. *Unique Tool & Mfg. Co.*, Civil Action No. 5:06CV32, 2007 WL 4284727, at *22 (W.D.N.C. Dec. 3, 2007) (holding that the pleadings and extensive briefing on the allegations fulfilled Rule 9(b)'s requirements); *Dastranj* v. *Dehghan*, Civil Action No. PX-15-2436, 2017 WL 3531476, at *11 (D. Md. Aug. 17, 2017) (finding that by failing to challenge the complaint before filing an answer, the defendant conceded that plaintiff's fraud claim satisfied Rule 9(b)).  Rule 9(b) therefore does not provide a basis for entry of judgment in favor of Mr. Neuberger.

## 2.  Timeliness of the Tax Assessments

Finally, Mr. Neuberger argues that any claim against him pursuant to Section 3713 is barred by the statute of limitations because the underlying tax assessment was untimely.  ECF No. 70-1 at 41–46.  "Generally, the IRS is required to assess tax liability within three years of the date on which the return to which the tax is related was filed . . . , [h]owever, the Service and a taxpayer may extend the . . . limitations period by entering a written agreement prior to expiration of the period.  *Ripley* v. *Comm'r*, 103 F.3d 332, 335 (4th Cir. 1996) (citing 26 U.S.C. § 6501(c)(4)). Section 6501(c)(4) provides that the time for tax assessment "may be extended" if "both the Secretary and the taxpayer have consented in writing."  26 U.S.C. § 6501(c)(4)(1). Here, it is uncontested that, on behalf of Lehcim, Mr. Neuberger agreed to extensions of the tax

assessment deadline by signing an IRS Form 872 (Consent to Extend the Time to Assess Tax) on multiple occasions.[12]  ECF Nos. 66-31; 72-5; 72-7; 85-12; 85-13.  Indeed, Mr. Neuberger admitted as much at the close of discovery.  ECF No. 72-1 at 8.  Mr. Neuberger's timeliness argument rests on the fact that the United States did not produce countersigned copies of the waivers.  ECF No. 70-1 at 43–44.  This argument is a nonstarter.  The United States has produced the fully executed forms.  Even if the countersigned forms were missing, "courts routinely permit the Government to prove the content of waivers through circumstantial evidence" even when "a limitations waiver form has been lost or destroyed."  *Randle* v. *United States of America (IRS)*, Civil Action No. 99-7992-CBM(RZX), 2000 WL 1739314, at *10 (C.D. Cal. Aug. 4, 2000), *aff'd sub nom.*, 15 Fed. Appx. 473 (9th Cir. 2001) (collecting cases); *see also United States* v. *Miller*, 584 F. Supp. 519, 520 (D. Md. 1984) (accepting an affidavit from an IRS employee in lieu of a form that included a waiver of the statute of limitations).  Mr. Neuberger is not entitled to judgment as a matter of law based on the timeliness of the tax assessments.

## III.    Conclusion

For the foregoing reasons, it is hereby ordered that the United States' Motion for Summary Judgment (ECF No. 66) and Mr. Neuberger's Cross-Motion for Summary Judgment (ECF No. 70) are denied and the motions to seal (ECF Nos. 71, 78, 81–82, 86) are denied, except that two interim motions to seal (ECF Nos. 67, 73) are granted in part and denied in part.  The August 22, 2024 conference Minute Entry and recording (ECF No. 84) will be unsealed.  A separate Order follows.

Date:  August 27, 2024 

_____/s/_____
Erin Aslan
United States Magistrate Judge

---

[12]  Another NQGRG principal signed the form on one occasion.  ECF No. 72-6.