UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-22-2977 |
| **ISAAC M. NEUBERGER,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff United States of America initiated this action on November 16, 2022, pursuant to the Federal Priority Statute, 31 U.S.C. § 3713, seeking a judgment against Defendant Isaac M. Neuberger "for transferring the assets of [ ] Lehcim Holdings, Inc. [(Lehcim)] to third parties before paying the United States' claim for income taxes at a time when Lehcim . . . was insolvent." ECF No. 1; *see also* ECF No. 41. On August 4-6, 2025, the Court held a bench trial to determine liability and damages, if any, arising from the United States' claim. ECF Nos. 127–129. On October 23, 2025, pursuant to Federal Rule of Civil Procedure 52, the Court issued a Memorandum of Decision that found Mr. Neuberger personally liable for the United States' claim pursuant to 31 U.S.C. § 3713(b). *United States* v. *Neuberger*, Civil Action No. EA-22-2977, 2025 WL 2997558 (D. Md. Oct. 23, 2025); ECF No. 144. Thereafter, at the Court's request for additional briefing, the parties filed memoranda of law specifically addressing the issue of damages.[1] ECF Nos. 147–150; 152–153. The Court heard oral argument on January 7, 2026. ECF No. 154. For the reasons set forth below, the Court will enter judgment in favor of the United States and against Mr. Neuberger in the amount of $1,880,987.96.

---

[1] The issues of liability and damages were not bifurcated at trial. Rather, the Court requested additional briefing on the issue of damages because the parties' post-trial submissions did not comprehensively address damages and because, as discussed herein, *see* II., *infra*, case law does not clearly illuminate the appropriate method of assessing damages in this case.

## I. BACKGROUND

The United States' sole cause of action arises under the Federal Priority Statute, which provides, in pertinent part, that "[a] claim of the United States Government shall be paid first when . . . a person indebted to the Government is insolvent and . . . the debtor without enough property to pay all debts makes a voluntary assignment of property . . . [or] . . . an act of bankruptcy is committed." 31 U.S.C. § 3713(a)(1)(A)(i), (iii). Under the Federal Priority Statute, "the term 'claim' . . . means any amount of funds . . . that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency." 31 U.S.C. § 3701(b)(1). "Federal courts at all levels of review have consistently held that this broad definition encompasses federal tax debt." *Neuberger*, 2025 WL 2997558, at *12; ECF No. 144 at 23[2] (collecting cases).

Section 3173(b) provides that a "representative . . . paying any part of a debt of the person . . . before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b). "Although the statutory language may suggest strict liability, courts have interpreted Section 3713(b) as requiring evidence that: (1) the representative transferred or distributed the debtor's assets before paying an antecedent claim of the United States; (2) when the debtor is insolvent; and (3) with knowledge or notice of the United States' claim." *Neuberger*, 2025 WL 2997558, at *16; ECF No. 144 at 32. After trial, the Court found Mr. Neuberger personally liable under Section 3713(b) because he was Lehcim's representative; had knowledge of the United States' claim for tax liabilities; and played an integral role in the development, oversight, and execution of a plan to pay entities other than

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document, except that references to the trial transcript include both the transcript page and line numbers and references to exhibits include both the exhibit number and, as applicable, the Bates number of the referenced page(s).

the United States when Lehcim was insolvent. *Neuberger*, 2025 WL 2997558, at *16-17; ECF No. 144 at 31–33.

To contextualize the following discussion of damages, a brief summary of the salient issues related to the United States' claim is necessary.[3] As relevant here, the Court found that "[f]or the tax years 2010 through 2020 Lehcim reported liabilities on the balance sheet of its Form 1120 [U.S. Corporate Income Tax Return] that primarily consisted of the three Nightingale loans." *Neuberger*, 2025 WL 2997558, at *4; ECF No. 144 at 7 (citing ECF No. 114-1 ¶ 45; Plaintiff's Exhibit (PX) 008–PX 018). "During these same tax years, Lehcim claimed substantial tax deductions each year for the 18 percent interest accruing on the 2002 Nightingale loan." *Neuberger*, 2025 WL 2997558, at *4; ECF No. 144 at 7 (citing ECF No. 114-1 ¶ 46).

The parties stipulated, and the Court found, that by July 2018, Mr. Neuberger was aware of the Internal Revenue Service's (IRS) preliminary conclusion that Lehcim's loan interest deductions on its 2010 to 2015 returns were improper and that Lehcim owed additional taxes for those years. *Neuberger*, 2025 WL 2997558, at *4; ECF Nos. 114-1 ¶ 49; 144 at 8; Joint Exhibit (JX) 023. The parties further stipulated, and the Court further found, that Mr. Neuberger received a copy of the letter the IRS sent to Lehcim on March 14, 2019. *Neuberger*, 2025 WL 2997558, at *5; ECF Nos. 114-1 ¶¶ 50, 54; 144 at 8; JX007. At trial, IRS employee Pamela Harris testified that this letter, commonly referred to as a "30-day letter," "is a report that is issued at the conclusion of an examination" (or audit). ECF No. 137 at 16:18–17:2. This letter "gives the taxpayer[ ] 30 days to [ ] agree, to request a conference with a manager, to provide additional information, or to write a protest and request an appeals conference." *Id.* at 17:6–9. The March 14, 2019 (or 30-day) letter identified the proposed tax deficiencies, associated

---

[3] The Court's prior Memorandum of Decision sets forth a more fulsome factual background. *United States* v. *Neuberger*, Civil Action No. EA-22-2977, 2025 WL 2997558, at *2-9 (D. Md. Oct. 23, 2025); ECF No. 144 at 3–19.

penalties, and interest for Lehcim for the years 2010 to 2015 in the amount of $1,880,987.96.[4] *Neuberger*, 2025 WL 2997558, at *5; ECF Nos. 114-1 ¶¶ 51–52; 144 at 8; JX007 at 0067–0070.

The parties further stipulated, and the Court found, that on November 20, 2019, the IRS mailed a statutory notice of deficiency to Lehcim (at the address of Mr. Neuberger's law firm), which identified a liability of $1,435,245 in unpaid taxes and penalties (exclusive of interest). *Neuberger*, 2025 WL 2997558, at *5; ECF Nos. 114-1 ¶ 58; 144 at 8–9; JX015 at 0204–0205. The amount of the tax liability and penalties identified in this notice and the previously issued 30-day letter are the same. JX007 at 0067–0070; JX015 at 0210, 0212. At trial, Ms. Harris testified that this notice is "a legal report" that the IRS issues "at the conclusion of an examination" (or audit). ECF No. 137 at 19:3–5. If the taxpayer does not respond to the 30-day letter, the IRS "would issue the statutory notice of deficiency," which gives the taxpayer 90 days "to agree or to petition [the] tax court if they don't agree." *Id.* at 19:6–9. Lehcim did not agree with the IRS's conclusions outlined in the 30-day letter or statutory notice of deficiency, but it did not appeal the 30-day letter or petition the United States Tax Court.[5] *Neuberger*, 2025 WL 2997558, at *5; ECF Nos. 137 at 17:10–15, 19:10–16; 144 at 8–9.

As noted, after having notice of the United States' claim, Mr. Neuberger helped engineer and oversee an elaborate plan—involving 10 rounds and 124 individual booking entries—to transfer money among various entities, including Lehcim, to repay the loans that the IRS had concluded were not bona fide. *Neuberger*, 2025 WL 2997558, at *5-7; ECF Nos. 114-1 ¶¶ 66–

---

[4] The letter identified penalties attributable to delinquency, 26 U.S.C. § 6651(a); failure to file, 26 U.S.C. § 6651(a)(1); and accuracy, 26 U.S.C. § 6662(a). Joint Exhibit (JX) 007 at 0084–0089. Failure to pay penalties, 26 U.S.C. § 6651(a)(2), were not included. *Id.* at 0084–0087. The letter further indicated that the interest on the taxes and penalties had been calculated through April 11, 2019. *Id.* at 0067–0070.

[5] The Internal Revenue Service (IRS) subsequently assessed Lehcim's tax deficiencies on July 13, 2020, and on other dates thereafter. *Neuberger*, 2025 WL 2997558, at *5; ECF Nos. 114-1 ¶ 64; 144 at 9.

4

69, 75; 144 at 9–10, 12–13. This repayment plan was executed between June 24, 2019, and March 5, 2020. Lehcim was insolvent at the time of and because of the repayment plan transfers. *Neuberger*, 2025 WL 2997558, at *9, *14; ECF No. 144 at 18, 29. According to the IRS, Lehcim's tax liability remains unpaid.[6] *Neuberger*, 2025 WL 2997558, at *8; ECF No. 114-1 ¶¶ 78–79; 144 at 15.

## II.   DISCUSSION

The only remaining question before the Court is the amount of damages Mr. Neuberger owes the United States based on his failure as Lehcim's representative to give priority to the United States' claim. The cases are clear that a representative's liability is "limited to the extent of the payment or value of the assets" paid or distributed. *United States* v. *Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996). Here, the total amount of funds that Mr. Neuberger helped distribute ($8,816,813) exceeds Lehcim's tax debt under any of the United States' proffered calculations.[7] *Neuberger*, 2025 WL 2997558, at *6; ECF No. 144 at 12.

The United States contends that Mr. Neuberger is liable for the full amount of Lehcim's unpaid tax debt, including all penalties and interest, which continue to accrue so long as the balance remains unpaid. ECF No. 147 at 6 ("In short, if Lehcim owes it, then, under the Federal

---

[6] On May 12, 2022, the IRS served a notice of levy in the amount of $1,543,929.29 upon the bank in which Mr. Neuberger's law firm has its operating account, which resulted in the bank freezing those funds. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.* v. *United States*, Civil Action No. EA-22-2129, 2024 WL 3234000, at *1 (D. Md. June 28, 2024), *reconsideration denied*, 2025 WL 659546 (D. Md. Feb. 28, 2025). The propriety of the IRS's action in this regard is the subject of the law firm's wrongful levy claim in the related case, *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.* v. *United States*, Civil Action No. EA-22-2129, which is set for a bench trial beginning on February 17, 2026. ECF No. 113 (EA-22-2129).

[7] The United States' calculations of Mr. Neuberger's asserted liability have grown throughout the pendency of this case. *Compare* ECF Nos. 1 ¶ A; 41 ¶ A ($2,091,455 plus interest) *with* ECF No. 141 at 33 ($3,084,593.74 as of August 4, 2025, plus statutory interest) *and* ECF No. 147 at 7 ($3,330,664 as of October 31, 2025, plus interest accruing thereafter under the Internal Revenue Code).

5

Priority Statute, so does Mr. Neuberger, including statutory interest."); *see also* ECF Nos. 149 at 5–6; 152 at 3.  According to the United States, calculation of damages here is "statutory arithmetic," which totals "$3,330,664 as of October 31, 2025."  ECF No. 149 at 6.  The United States posits that to reach this amount, the Court must begin with "the amounts of the tax assessments . . . determined in Le[hc]im's audit" and then calculate the penalties that "accrue as a matter of law under 26 U.S.C. §§ 6651(a) and 6662(a) for Lehcim's failure to file returns, properly report tax, and pay tax when due," and then further add "the amount of interest [that] accrues as a matter of law under 26 U.S.C. § 6621 from the date the taxes were due until they are paid."  ECF No. 147 at 6.

Remarkably, the United States asserts that "[t]here is no grey area in this phase of the case" (ECF No. 147 at 6), while simultaneously failing to offer clear legal or evidentiary support for its position.  The United States has not identified precedent or other binding authority that holds that the intricate tax code calculations it proposes govern damages in a Federal Priority Statute case.  The cited statutes concern computation of penalties and interest under the Internal Revenue Code in connection with a tax liability.  At the risk of stating the obvious, the United States' cause of action in this case arises under the Federal Priority Statute, not the tax code, which necessarily shapes the scope of available remedies.  *E.g.*, *United States* v. *Cole*, 733 F.2d 651, 655-656 (9th Cir. 1984) ("Although this [Section 3713] case involves collection of a tax debt, it is not an action against the taxpayer or under the Internal Revenue Code.").

Neither party has identified, and the Court has not found, any case that explicitly discusses—let alone establishes—the method of damage calculation in a case such as this.  The cases upon which the parties rely in support of their respective arguments serve as mere examples of when various courts have—and have not—held a representative or executor liable for penalties and/or interest in addition to a tax debt.  *Compare* ECF Nos. 147 at 9–10; 152 at

6

10–12 (discussing cases) *with* ECF Nos. 150 at 9–10; 153 at 6–9 (discussing cases).  These cases do not, however, conclusively establish that Mr. Neuberger is liable for the full extent of Lehcim's tax debt as if he were the taxpayer himself.  At best, the parties' smattering of cases from across the country over the last several decades are persuasive authority.  The weight they carry is limited by the fact-bound nature of the decisions, none of which closely parallel the case at bar.  For example, in *United States* v. *Estate of Kime*, the court found the executor of the taxpayer's estate personally liable for the balance of all unpaid taxes, penalties, and interest, which had already been assessed, when the executor distributed to himself the estate's assets.  950 F. Supp. 950, 952 (D. Neb. 1996); *see also United States* v. *Estate of Kime*, No. 4:CV95-3054, 1996 WL 774543, at *1-2 (D. Neb. Nov. 5, 1996).  Thus, unlike here, at the time the executor distributed assets in derogation of the priority of the United States' claim, all of the liabilities had accrued, and the executor had notice of the full amount due.  The utility of these cases is further circumscribed by the fact that the holdings relate to other legal issues entirely.  For example, the court's discussion of Section 3713 in *United States* v. *Whisenhunt* was limited to recounting the fact that a default judgment had been entered against the executor and observing that his "failure to fully pay the Estate's federal estate tax and penalties constituted a violation of his statutory duties under 31 U.S.C. § 3713 as well as a violation of his fiduciary duties under the Texas Probate Code."  No. 3:12-CV-0614-B, 2014 WL 3610792, at *1 (N.D. Tex. July 21, 2014).[8]

---

[8] The parties also offer a series of final judgments from other cases, which they contend support their respective positions.  *Compare* ECF Nos. 147-9 (holding the estate executor liable for the amount owed, plus "all interest and statutory additions that accrue under the Internal Revenue Code"); 147-10 (same) *with* ECF No. 153-1 (calculating interest on the representative's liability under the general civil interest statute, 28 U.S.C. § 1961(a)).  By their nature, these final judgments do not contain any substantive discussion of how a court should reconcile the United States' cause of action (Federal Priority Statute) and the nature of its claim (unpaid taxes).  Therefore, these exhibits, like the cases discussed above, offer mere illustrations of how different

7

As reference to *Whisenhunt* foreshadows, most of the cases the United States cites involve the liability of an executor for the estate's tax liabilities, which is related, but adjacent to the issues presented in this action.[9] The statutory requirements for a Federal Priority Statute claim are distinct, and more streamlined, for an estate executor as opposed to another type of representative. Claims arising under Section 3713(a)(1)(A) require a triggering event. 31 U.S.C. § 3713(a)(1)(A)(i)-(iii); *see also United States* v. *Neuberger*, Civil Action No. EA-22-2977, 2024 WL 3964886, at *8 (D. Md. Aug. 27, 2024); ECF No. 88 at 15 (discussing the elements of the United States' cause of action); *Neuberger*, 2025 WL 2997558, at *15-16; ECF No. 144 at 29–31 (discussing the triggering event element). The representative must take some affirmative action, *i.e.*, a voluntary assignment of property, an attachment of property, or an act of bankruptcy, for liability to ensue. 31 U.S.C. § 3713(a)(1)(A)(i)-(iii).

In contrast, liability attaches under Section 3713(a)(1)(B) when "the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). This statutory scheme reflects the principle that a "fiduciary (personal representative) of [a taxpayer's] estate" is "responsible for the payment of income and estate taxes, as well as additions to tax, owed by [the taxpayer's] estate." *Allen* v. *Commissioner of Internal Revenue*, 78 T.C.M. (CCH) 828, 1999 WL 1063545, at *7 (T.C. Nov. 24, 1999). An executor's fiduciary duty to settle the estate's affairs is also reflected in the Internal Revenue Code. *E.g.*, 26 U.S.C. § 6901(a)(1)(B) (providing that the liability of a fiduciary under Section 3713(b) with respect to income, estate, or gift tax "shall . . . be assessed,

---

courts have resolved this issue and provide no reasoned support for the determination of damages here.

[9] *E.g.*, *United States* v. *Stiles*, No. CIV.A. 13-138, 2014 WL 6775263, at *1 (W.D. Pa. Dec. 2, 2014); *United States* v. *Whisenhunt*, No. 3:12-CV-0614-B, 2014 WL 3610792 (N.D. Tex. July 21, 2014); *United States* v. *Estate of Kime*, No. 4:CV95-3054, 1996 WL 774543 (D. Neb. Nov. 5, 1996).

paid, and collected in the same manner . . . as in the case of the taxes with respect to which the liabilities were incurred."). Thus, the executor's liability runs directly to that of the estate, which further distinguishes the liability of an executor from that of an ordinary representative under Section 3713.

Further calling into question the United States' proffered damage calculation is case law addressing the award and calculation of interest in a Federal Priority Statute case such as this.[10] For example, in *United States* v. *Read*, the court applied the discretionary analysis of prejudgment interest that applies in civil cases and which considers equitable factors, rather than the statutory mandate that applies in tax cases. No. 3:14-CV-344 (MPS), 2016 WL 310721, at *3 (D. Conn. Jan. 26, 2016); *see also Moore Bros. Co.* v. *Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000) ("The award of prejudgment interest is within the discretion of the district court," which "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate."). Notably, the *Read* court observed that "[o]f the cases that cite 31 U.S.C. § 3713 and discuss prejudgment interest, most decline to award it." 2016 WL 310721, at *3 (discussing cases). Other decisions refusing to apply the Internal Revenue Code interest rate in cases that do not arise under the tax code—even if they involve the collection or priority of a tax debt—are in accord. *E.g.*, *Cole*, 733 F.2d at 655-656 (calculating interest under 28 U.S.C. § 1961(c)(1) in a Section 3713 case); *In re Milspec, Inc.*, 82 B.R. 811, 813 n.4 (Bankr. E.D. Va. 1988) (observing that "an 'internal revenue case' refers only to a case in which the action is against the taxpayer or under the Internal Revenue Service Code") (quoting 28 U.S.C. § 1961(c)(1)); *In re Conn. Aerosols, Inc.*, 42 B.R. 706, 711 (D. Conn. 1984) (concluding that a

---

[10] The award of interest in civil cases is authorized by statute: "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). This same statute contains a carve-out "any internal revenue tax case." 28 U.S.C. § 1961(c)(1). In such cases, interest is governed instead by "[S]ection 6621 of the Internal Revenue Code." *Id.*

9

bankruptcy proceeding, in which the IRS was a creditor, was not an "internal revenue tax case[ ]" because it did not involve a "dispute over the computation of tax or whether tax is owed") (quoting 28 U.S.C. § 1961(c)(1)).

The lack of clear authority governing the calculation of damages in this action calls for analysis of the few cases that do exist, as well as the exercise of reason and judgment. To this end, the undersigned finds persuasive cases that have concluded that the operative variable in determining the damages is the amount of the United States' claim at the time of the representative's payment. For example, in *United States* v. *Estate of Dickerson* ex rel. *Tate*, the court concluded that the relevant questions for determining damages were "how much was the [ ] property worth when Tate distributed it to himself and what was the unpaid balance of Dickerson's debt, including penalties and interest, *at the time* of such distribution." 189 F. Supp. 2d 622, 626-627 (W.D. Tex. 2001) (emphasis in original). Consistent with this approach, the United States Tax Court held in *Johnson* v. *Commissioner of Internal Revenue* that the representative was liable only for the amount of unpaid taxes of which she had notice, not the after-accruing penalties and interest. 78 T.C.M. (CCH) 358, 1999 WL 667281, at *3 (T.C. Aug. 27, 1999) (awarding $30,000 in damages because "Ms. Johnson knew about the taxes owed by Mr. Johnson to the extent of $30,000" and "should have paid this amount to the Internal Revenue Service before making each of the five disbursements"). Similarly, in *Singleton* v. *Commissioner of Internal Revenue*, the United States Tax Court held that the representative was "liable for unpaid estate taxes together with interest accrued thereon to . . . the date respondent's notice of liability was mailed to petitioner." 71 T.C.M. (CCH) 3127, 1996 WL 283687, at *1 (T.C. May 30, 1996). Key to the courts' assessment of damages in these cases was the amount of the United States' claim of which the representative had knowledge at or before the time payment was made in derogation of the United States' priority.

These cases are consonant with another body of case law holding that "in order to qualify for first priority in payment under 31 U.S.C. § 3713(a), the debt owed to the United States Government must be in existence at the time the insolvent person assigns the property." *Cerilli* v. *Newport Offshore, Ltd.*, 624 A.2d 835, 838 (R.I. 1993); *accord United States* v. *Renda,* 709 F.3d 472, 482 (5th Cir. 2013); *In re Metzger*, 709 F.2d 32, 34 (9th Cir. 1983); *United States* v. *Lazare*, No. 214CV01075APGVCF, 2016 WL 1127627, at *6 (D. Nev. Mar. 4, 2016); *Guillermety* v. *Secretary of Educ. of U.S.*, 241 F. Supp. 2d 727, 733 (E.D. Mich. 2002). The United States is therefore not entitled to the after-accruing interest and failure-to-pay penalties it seeks as part of its damage calculation.[11]

The undersigned finds that Mr. Neuberger is liable for the $1,880,987.96 in unpaid taxes, penalties, and interest identified in the IRS's March 14, 2019 (or 30-day) letter. This represents the amount of the United States' claim that had accrued and of which Mr. Neuberger had knowledge prior to and during execution of the repayment plan, which was carried out from June 25, 2019, to March 5, 2020. Although the 30-day letter identified the IRS's preliminary conclusions regarding tax liabilities and penalties, these same amounts were subsequently confirmed in the November 20, 2019 statutory notice of deficiency, which was issued while the repayment plan was underway. The undersigned does not find that the equities of this case counsel in favor of an award of prejudgment interest. As noted, case law does not find robust support for the award of prejudgment interest in Federal Priority Statute cases. *Read*, 2016 WL 310721, at *3. Further, the facts of this case do not counsel in favor of such an award.

---

[11] As Mr. Neuberger correctly notes, a portion of the penalties the United States now claims could not have been due as a matter of law at the time Mr. Neuberger executed his role in the repayment plan. ECF No. 148 at 8 n.2 (citing 26 U.S.C. § 6651(a)(3) (addressing imposition of failure-to-pay penalties)). To the extent that the United States rests on its assertion that "'unpaid taxes' automatically include[ ] not just the tax itself, but also accrued additions to tax and interest," including failure-to-pay penalties (ECF No. 152 at 3–4), it fails to bridge the gap between the Internal Revenue Code and the Federal Priority Statute with controlling case law.

11

Importantly, there is no indication that Mr. Neuberger engaged in self-dealing. *Cf. id.* (awarding prejudgment interest because, among other things, "rather than advance the common good, Reed enriched himself and his family at the public's expense").

Finally, it is worth noting that even if the United States' position regarding the calculation of damages were correct, there is an inadequate evidentiary basis to support its requested damage award. The United States acknowledges that "application of the relevant statutes is laborious in this case . . . because it involves many penalties, many dates, many years, and (for 2011) multiple tax assessments." ECF No. 149 at 6. To aid the Court in these "laborious" calculations, as part of its post-trial briefing, the United States has tendered "reports calculating interest for each tax year from commercial interest-calculation software . . . that the IRS uses," as well as a declaration of an IRS employee that purports to explain the report. ECF No. 147 at 6-7. These post-trial exhibits were not entered into evidence and Mr. Neuberger did not have an opportunity to raise objections or test their veracity via cross-examination. ECF No. 155 at 48:2-11. The United States Court of Appeals for the Fourth Circuit has found that evidence of formulaic damage calculations submitted in connection with post-trial briefing, but not entered in evidence, may be appropriate in tax claims. *E.g.*, *Bahan Textile Mach. Co.* v. *United States*, 453 F.2d 1100, 1102 n.2 (4th Cir. 1972) (concluding that although the United States' calculations were not themselves in evidence, they were "in the nature of arguments based on evidence and . . . it was not improper to include them in the post-trial brief"). Yet, the Court is unaware of any cases holding that such formulaic calculations are appropriately applied to the Federal Priority Statute claim at issue here. To the extent that the United States contends that such materials need not be entered into evidence because the calculation of penalties and interest are statutorily determined, the Court refers to the previous discussion regarding the applicability of Internal Revenue Code calculations to the disposition of damages in this action.

12

## III. CONCLUSION

In light of the foregoing, it is hereby ordered that judgment in the amount of $1,880,987.96 is entered in favor of the United States and against Mr. Neuberger. A separate Order follows.

Date: January 23, 2026                                     /s/
                                                                    Erin Aslan
                                                                    United States Magistrate Judge